MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2016 ME 121
Docket:      Pen-15-555
Argued:      May 5, 2016
Decided:     August 2, 2016

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

DAY'S AUTO BODY, INC.

v.

TOWN OF MEDWAY et al.

GORMAN, J.

[¶1]   Day's Auto Body, Inc., (Day's Auto) appeals from summary judgments entered in the Superior Court (Penobscot County, *Anderson, J.*) in favor of the Town of Medway (the Town) and Emery Lee and Sons, Inc., (ELS) on Day's Auto's negligence claims arising out of the response to a fire at its business location.   Day's Auto contends that the trial court erred in determining that the Town and ELS are immune from Day's Auto's claims pursuant to the Maine Tort Claims Act (MTCA), 14 M.R.S. §§ 8101-8118 (2015).  We affirm the judgments.

I.  BACKGROUND

[¶2]  Viewed in the light most favorable to Day's Auto, the nonprevailing party, the summary judgment record establishes the following facts.

2

*See Remmes v. Mark Travel Corp.*, 2015 ME 63, ¶ 3, 116 A.3d 466.   While responding to a fire at Day's Auto's shop on October 3, 2011, the Town's fire department filled hoses with water before the nozzles were opened, refused to allow firefighters to enter the building, sprayed water on a fireproof door, refilled fire trucks from a single hydrant instead of from two other available hydrants or from the nearby Penobscot River, drove a truck toward a water holding tank in such a way that it would be impossible to unload water into the holding tank, and connected a water hose to a nozzle improperly.  These actions allegedly prevented the Town from limiting the damage that the fire caused to Day's Auto's property.

[¶3]    ELS is a general contracting and excavating business in Millinocket.   Emery Lee, ELS's owner and manager, received a call from someone at the Town's fire department directing him to report to the fire scene with an excavator to assist with the effort to extinguish the fire.  When Lee arrived, members of the fire department directed him to take various actions using the excavator, including taking down walls and moving a large carrying beam from the center of what remained of the building.[1]  After about four hours, the fire department indicated to Lee that the fire was under

---

[1]   The parties dispute the severity of the fire when Lee arrived and the extent and cause of property damage that occurred on the day of the fire.  None of these disputes is material to the issue of immunity pursuant to the Maine Tort Claims Act, 14 M.R.S. §§ 8101-8118 (2015).

control and that he could leave the scene. ELS submitted a bill to the Town for its work at the fire scene based on four hours of work at an hourly rate.

[¶4] Two years after the fire, Day's Auto filed its complaint, alleging that the Town and ELS used vehicles, machinery, and equipment negligently in the course of their response to the fire.[2] The Town and ELS each moved for a summary judgment, claiming immunity from Day's Auto's suit pursuant to the MTCA.

[¶5] The court granted both motions. The court first concluded that the Town is immune from Day's Auto's suit because the exception to governmental tort claims immunity upon which Day's Auto relied—for "[o]wnership[,] maintenance or use of vehicles, machinery and equipment"— does not apply. *See* 14 M.R.S. § 8104-A(1). The court also determined that the Town is entitled to discretionary function immunity pursuant to 14 M.R.S. § 8104-B(3), so that even if the "vehicles, machinery and equipment" exception *did* apply, the Town would still be immune from Day's Auto's suit. With regard to ELS, the court concluded that discretionary function immunity

---

[2] On April 28, 2014, Day's Auto filed a motion for leave to amend its complaint along with a proposed amended complaint in which it also claimed that the Town is vicariously liable for ELS's actions, alleging that ELS "was acting at the direction of and on behalf of [the Town] at all relevant times." Although it is unclear from the record whether (and if so, when) the trial court granted ELS's motion to amend the complaint, given our affirmance of the summary judgment in ELS's favor, *see infra* ¶¶ 13-22, any well-pleaded vicarious liability claim is moot.

4

applied because when ELS assisted the Town with the fire, it was, for purposes of the MTCA, acting as an employee of the Town and was engaged in a discretionary function.  *See* 14 M.R.S. §§ 8102(1), 8111(1)(C).  Day's Auto filed this appeal.

## II.  DISCUSSION

### A.  Standards of Review

[¶6]  We review a court's entry of a summary judgment de novo, viewing the evidence in the light most favorable to the nonprevailing party to determine whether a genuine issue of material fact exists.  *Budge v. Town of Millinocket*, 2012 ME 122, ¶ 12, 55 A.3d 484; *see* M.R. Civ. P. 56(c) (requiring entry of a summary judgment where the record reveals "that there is no genuine issue as to any material fact . . . and that any party is entitled to a judgment as a matter of law").  "A fact is material if it has the potential to affect the outcome of the suit," and an issue of material fact is genuine "when a fact-finder must choose between competing versions of the truth, even if one party's version appears more credible or persuasive."  *Angell v. Hallee*, 2014 ME 72, ¶ 17, 92 A.3d 1154 (quotation marks omitted).  "When the material facts are not in dispute, we review de novo the trial court's

interpretation and application of the relevant statutes and legal concepts." *Remmes*, 2015 ME 63, ¶ 19, 116 A.3d 466.

[¶7] "Summary judgment is appropriate when a defendant is immune from tort liability." *Grossman v. Richards*, 1999 ME 9, ¶ 3, 722 A.2d 371; *see Moore v. City of Lewiston*, 596 A.2d 612, 614 (Me. 1991). Because "immunity is an issue distinct from liability," *Grossman*, 1999 ME 9, ¶ 3, 722 A.2d 371 (quotation marks omitted), our review in this appeal is limited to the question of whether the Town and ELS are immune from suit pursuant to the MTCA as a matter of law.

B.     Summary Judgment for the Town

[¶8] The MTCA begins with a broad grant of governmental immunity from tort claims: "Except as otherwise expressly provided by statute, all governmental entities shall be immune from suit on any and all tort claims seeking recovery of damages."[3]   14 M.R.S. § 8103(1). The statute then enumerates several exceptions to that immunity, including the provision that "[a] governmental entity is liable for its negligent acts or omissions in its ownership, maintenance, or use of" various types of "vehicles, machinery and equipment." 14 M.R.S. § 8104-A(1). Because "the MTCA employs an

---

[3] It is undisputed that the Town is a "governmental entity" within the meaning of the MTCA. *See* 14 M.R.S. § 8102(2), (3).

exception-to-immunity approach rather than an exception-to-liability approach," when we consider the exceptions to immunity for governmental entities, "we start from the premise that immunity is the rule and exceptions to immunity are to be strictly construed." *Thompson v. Dep't of Inland Fisheries & Wildlife*, 2002 ME 78, ¶ 5, 796 A.2d 674 (quotation marks omitted); *see Estate of Fortier v. City of Lewiston*, 2010 ME 50, ¶ 14 n.7, 997 A.2d 84; *Carroll v. City of Portland*, 1999 ME 131, ¶ 6 n.3, 736 A.2d 279.

[¶9] Day's Auto argues that the summary judgment record reveals a genuine dispute of material fact as to whether the Town's actions fall within section 8104-A(1)'s exception concerning "vehicles, machinery and equipment," and that the trial court therefore erred by entering a summary judgment in the Town's favor. We disagree. In a line of cases interpreting section 8104-A(1), we have made clear that the mere fact that a vehicle or piece of equipment or machinery is involved in the conduct that allegedly caused harm does not, in itself, implicate the exception to immunity. In *Brooks v. Augusta Mental Health Institute*, for example, where a patient's estate sued several government defendants for negligence when the patient died after jumping from a moving bus operated by the defendants, we held that the exception did not apply because "the gravamen of [the] claim [was] not the

defendants' negligent operation, use or maintenance of the bus, but the monitoring and supervision of the decedent by [government] employees while the decedent was riding on the bus." 606 A.2d 789, 790 (Me. 1992); *see New Orleans Tanker Corp. v. Dep't of Transp.*, 1999 ME 67, ¶ 9, 728 A.2d 673 ("The major risk from the negligent use of vehicles with the power to move is that they will be driven or transported in locations where the general public is exposed to the possibility of a collision and resulting harm.").

[¶10] We recognized this principle again in *Thompson*, where the plaintiff sought to invoke the exception after he was injured in a snowmobile accident. 2002 ME 78, ¶¶ 2, 6-9, 796 A.2d 674. He alleged that a rescue effort by the Department of Inland Fisheries & Wildlife was unduly delayed and that it exacerbated his injuries because a rescue helicopter was inadequately fueled and its navigational and radio communications equipment was inadequate. *Id.* ¶¶ 2, 6. "[T]he kind of negligence falling within the exception to immunity provided in section 8104-A(1)," we stated, "involves harms that flow naturally or directly from the negligent use or maintenance of vehicles." *Id.* ¶ 7. "[T]he focus is on the risk of harm naturally or directly caused by the vehicle's contact with the general public." *Id.* ¶ 8.

[¶11]  We apply the same reasoning here.  It is true that fire trucks may, at times, come into contact with the general public to create a risk of collision. The gravamen of Day's Auto's claim against the Town, however, is that the Town made imprudent tactical decisions in the course of fighting the fire. Those decisions, if they were poor ones, could indeed create a risk of greater fire damage, but they do not create the type of risk for which the Legislature intended governmental entities to incur tort liability when it enacted section 8104-A(1).  Section 8104-A(1) cannot be used to end a governmental entity's immunity from tort claims simply because vehicles or equipment were involved in the conduct that allegedly caused harm.

[¶12]  Because section 8104-A(1)'s vehicle exception is inapplicable and Day's Auto makes no claim that any other exception to immunity applies, we conclude that the Town is immune from Day's Auto's suit pursuant to section 8103(1) and that the court therefore did not err when it entered a summary judgment in favor of the Town.  We do not address the parties' arguments regarding the Town's discretionary function immunity pursuant to 14 M.R.S. § 8104-B(3).  *See Estate of Fortier*, 2010 ME 50, ¶¶ 10, 16, 997 A.2d 84; Simmons, Zillman & Gregory, *Maine Tort Law* § 15.20 at 15-47 (2004 ed.) (noting that section 8104-A's exceptions to immunity provide "the sole

situations in which governmental entities may be liable under the MTCA," and that "[i]f the plaintiff's claim cannot fit within one of [section 8104-A's] four categories, the plaintiff will be unable to recover under the MTCA").

C.      Summary Judgment for ELS

[¶13]   Day's Auto also argues that the court erred by entering a summary judgment in ELS's favor, contending that (1) ELS does not meet the MTCA's definition of "employee," (2) discretionary function immunity does not apply to ELS's actions at the fire scene, and (3) ELS cannot be immune from suit without first demonstrating that it did not carry liability insurance.

[¶14]   We first address the question of whether ELS was a Town employee, for purposes of the MTCA, when it responded to the fire at Day's Auto's shop.  The MTCA defines "employee" as follows:

> "Employee" means *a person* acting on behalf of a governmental entity in any official capacity, whether temporarily or permanently, and whether with or without compensation from local, state or federal funds, including . . . volunteer firefighters as defined in Title 30-A, section 3151[,] . . . but the term "employee" does not mean *a person or other legal entity acting in the capacity of an independent contractor under contract to the governmental entity*.

14 M.R.S. § 8102(1) (emphases added).[4]  Day's Auto argues, at the outset, that ELS cannot be an employee as defined by the statute because ELS is a corporation, not a "person."  We are not persuaded.  Pursuant to 1 M.R.S. § 72(15) (2015), "'[p]erson' may include a body corporate."  This rule "shall be observed in the construction of statutes . . . unless such construction is inconsistent with the plain meaning of the enactment, the context otherwise requires or definitions otherwise provide."  1 M.R.S. § 72 (2015).  None of these circumstances applies here.  Section 8102(1), by its terms, specifies that a legal entity that is "acting in the capacity of an independent contractor" is not an employee.  If, as Day's Auto contends, no legal entity could ever meet the MTCA's definition of "employee," the phrase "acting in the capacity of an independent contractor" would be surplusage.  We therefore decline to adopt Day's Auto's interpretation.  *See Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 22, 107 A.3d 621 ("We reject interpretations that render some language mere surplusage.").

[¶15]  Having determined that it is possible for a legal entity to meet the MTCA's definition of "employee," we turn to the question of whether, here, ELS was an employee of the Town when it responded to the fire at Day's

---

[4]  ELS does not contend that it meets the statutory definition of "voluntary firefighter," which is "an active member of a volunteer fire association who receives no compensation from the municipality other than injury and death benefits."  30-A M.R.S. § 3151(4) (2015).

Auto's business location. This issue is "predominantly a question of law," *Cushman v. Tilton*, 652 A.2d 650, 651 (Me. 1995), and here, the facts material to the determination are undisputed, *see Campbell v. Washington Cty. Tech. Coll.*, 219 F.3d 3, 7-8 (1st Cir. 2000). ELS is a business independent from the Town. On the day of the fire, the Town's fire department summoned an ELS employee, Emery Lee, to assist at the fire scene with an excavator. Lee brought an excavator to the scene and, after performing various actions with the excavator for about four hours—all at the direction of the Town—the fire department indicated that he could leave. ELS submitted a bill to the Town for its work at the fire scene based on four hours of work at an hourly rate.

[¶16] In previous cases where we analyzed whether an alleged tortfeasor was a government employee pursuant to the MTCA, we have most often focused on the first part of section 8102(1): "'Employee' means a person acting on behalf of a governmental entity in any official capacity, whether temporarily or permanently, and whether with or without compensation from local, state or federal funds . . . ." 14 M.R.S. § 8102(1); *see Kennedy v. State*, 1999 ME 85, ¶¶ 7-12, 730 A.2d 1252; *Cushman*, 652 A.2d at 651-52; *Clark v. Me. Med. Ctr.*, 559 A.2d 358, 360 (Me. 1989); *Taylor v. Herst*, 537 A.2d 1163,

1165 (Me. 1988). "[W]e have characterized the [MTCA's] definition of employee as 'broad.'"[5] *Kennedy*, 1999 ME 85, ¶ 8, 730 A.2d 1252 (quoting *Taylor*, 537 A.2d at 1165). We examine the worker's job responsibilities, *see Cushman*, 652 A.2d at 652, and whether the work was performed at the direction of the governmental entity, *see Clark*, 559 A.2d at 360. We also consider the worker's function in relation to that of the governmental entity. *See Kennedy*, 1999 ME 85, ¶¶ 7-12, 730 A.2d 1252. In *Kennedy*, for example, we determined that a guardian ad litem serving in child custody proceedings was a government employee pursuant to the MTCA based on her role as an "arm of the court." 1999 ME 85, ¶¶ 8-12, 730 A.2d 1252. The guardian was compensated for "acting on behalf of" and "assist[ing] the court." *Id.* ¶¶ 10, 12 (quotation marks omitted).

[¶17] According to the final clause of section 8102(1), "the term 'employee' does not mean a person or other legal entity acting in the capacity of an independent contractor under contract to the governmental entity." 14 M.R.S. § 8102(1). The common-law distinction between an employee and an independent contractor, therefore, also guides our analysis. *See Campbell*,

---

[5] *See, e.g.*, *Clifford v. MaineGeneral Med. Ctr.*, 2014 ME 60, ¶ 47, 91 A.3d 567 (collecting cases where we held that privately-employed medical workers were government employees pursuant to the MTCA); *McNally v. Town of Freeport*, 414 A.2d 904, 905 (Me. 1980) (holding that "an agent of the Town" who administered a blood test was a government employee pursuant to the MTCA).

219 F.3d at 7; *Miller v. Szelenyi*, 546 A.2d 1013, 1019-20 (Me. 1988). To make this distinction, we consider the following eight factors:

> "(1) the existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price;
>
> (2) independent nature of the business or his distinct calling;
>
> (3) his employment of assistants with the right to supervise their activities;
>
> (4) his obligation to furnish necessary tools, supplies, and materials;
>
> (5) his right to control the progress of the work except as to final results;
>
> (6) the time for which the workman is employed;
>
> (7) the method of payment, whether by time or by job; [and]
>
> (8) whether the work is part of the regular business of the employer."

*Legassie v. Bangor Publ'g Co.*, 1999 ME 180, ¶ 6 n.1, 741 A.2d 442 (quoting *Murray's Case*, 130 Me. 181, 186, 154 A. 352 (1931)); *see id.* ¶ 8. Control is the most important factor, and "[t]he right to control the details of the performance, present in the context of an employment relationship, must be distinguished from the right to control the result to be obtained, usually found in independent contractor relationships." *Id.* ¶ 6 (quotation marks omitted).

14

[¶18]  Here, the first and eighth factors weigh in favor of a conclusion that ELS was a government employee pursuant to the MTCA when it performed the actions relevant to this case: no contract existed for performance of the work at a fixed price; and the type of work, fire suppression, was the regular business of the Town.  *See* 30-A M.R.S. § 3152 (2015) (authorizing municipalities to provide fire protection services). The second, fourth, and sixth factors point toward the contrary conclusion: ELS is a business independent from the Town, furnished the relevant tools, and worked for a relatively short period of time.  The third and seventh factors are unhelpful in this case; there is no evidence regarding whether ELS could have employed assistants, and although ELS was paid based on an hourly rate, the payment was for one distinct job.

[¶19]  With regard to the fifth and most important factor, control, the relevant evidence, which is undisputed, reveals that ELS acted only at the direction of the Town, and that the Town maintained control over "the details of the performance," not simply "the result to be obtained," *see Legassie*, 1999 ME 180, ¶ 6, 741 A.2d 442.  ELS took no action other than at the direction of members of the Town's fire department, and followed specific directives from the department about how to use the excavator to take control

of the fire.  Because the most important factor weighs in favor of a conclusion that ELS was the Town's employee and because, like the guardian ad litem in *Kennedy*, ELS functioned only as part of the Town, we conclude that ELS was a government employee when, at the direction of the Town, it responded to the fire and used its excavator as directed by the Town in the Town's attempt to minimize the damage.

[¶20]  Next, we address the question of whether an exception to liability affords ELS immunity from Day's Auto's suit as a Town employee.  For claims against government employees, as opposed to those against governmental entities, liability is the rule and immunity the exception.  *See* 14 M.R.S. §§ 8102(2-A), 8104-D; *Hilderbrand v. Washington Cty. Comm'rs*, 2011 ME 132, ¶ 8, 33 A.3d 425.  The exceptions to tort claims liability for government employees are enumerated in 14 M.R.S. § 8111(1), which provides, inter alia, that "employees of governmental entities shall be absolutely immune from personal civil liability for . . . [a]ny intentional act or omission within the course and scope of employment[,] provided that such immunity does not exist in any case in which an employee's actions are found to have been in bad faith."  14 M.R.S. § 8111(1)(E).  This "intentional act immunity," therefore, affords government employees immunity from tort liability where the claim

arises out of intentional acts by the employee that are within the scope of employment and performed in good faith. "Conduct that is within the scope of employment is the type of conduct the employee was hired to perform; occurs within the time and space of the employment; and is undertaken, at least partially, to serve the employee's master." *Morgan v. Kooistra*, 2008 ME 26, ¶ 21, 941 A.2d 447.

[¶21] Here, the summary judgment record confirms that ELS's alleged conduct meets all of the requirements for intentional act immunity pursuant to section 8111(1)(E). ELS's actions were intentional, they were within the scope of its employment, and there is no allegation or indication that they were taken in bad faith. *See Lyons v. City of Lewiston*, 666 A.2d 95, 101-02 (Me. 1995) (affirming a summary judgment in favor of a government-employee defendant where the record revealed no genuine dispute as to whether the defendant acted in bad faith); *cf. Morgan*, 2008 ME 26, ¶¶ 21-23, 941 A.2d 447 (concluding that a government-employee defendant was not entitled to intentional act immunity because alleged defamatory remarks "were motivated by personal, not professional, objectives" and were therefore outside the scope of employment); *Rodriguez v. Town of Moose River*, 2007 ME 68, ¶ 25, 922 A.2d 484 (concluding that a

government-employee defendant in a negligence action was not entitled to intentional act immunity because the omission that gave rise to the suit was unintentional). The trial court therefore did not err when it entered a summary judgment in favor of ELS, and we do not reach Day's Auto's argument that the court incorrectly concluded that ELS is entitled to discretionary function immunity pursuant to 14 M.R.S. § 8111(1)(C).[6]

[¶22] Finally, we are not persuaded by Day's Auto's argument that, notwithstanding ELS's immunity as a government employee, ELS can still be held liable for damages to the extent of any private liability insurance that it holds. Day's Auto relies on a provision of the MTCA governing the defense and indemnification of government employees by their employers in "[c]ertain suits arising out of use of motor vehicles."[7] 14 M.R.S. § 8112(9). Contrary to

---

[6] Although the trial court concluded that ELS was entitled to a summary judgment based on discretionary function immunity, *see* 14 M.R.S. § 8111(1)(C), we affirm the judgment on different grounds, *see Bouchard v. Frost*, 2004 ME 9, ¶ 8, 840 A.2d 109.

[7] Title 14 M.R.S. § 8112(9) provides, in its entirety:

> **9. Certain suits arising out of use of motor vehicles.** A governmental entity is not required to assume the defense of or to indemnify an employee of that governmental entity who uses a privately owned vehicle, while acting in the course and scope of employment, to the extent that applicable liability insurance coverage exists other than that of the governmental entity. In such cases, the employee of the governmental entity and the owner of the privately owned vehicle may be held liable for the negligent operation or use of the vehicle but only to the extent of any applicable liability insurance, which constitutes the primary coverage of any liability of the employee and owner and of the governmental entity. To the extent that liability insurance other than that of the governmental entity does not provide

Day's Auto's contention, it is plain that section 8112(9) does not apply where, as here, the government employee is otherwise immune from suit pursuant to the MTCA. Unlike 14 M.R.S. § 8116, which expressly states that a governmental entity that possesses insurance coverage "in areas where the governmental entity is immune . . . shall be liable in those substantive areas but only to the limits of the insurance coverage," nothing about section 8112(9) indicates that, for a government employee, possession of private insurance coverage vitiates any absolute immunity conferred by section 8111(1). According to Day's Auto's interpretation, section 8112(9) would govern the defense and indemnification of employees who are totally immune from suit in the first place. We decline to adopt such an interpretation. *See Fortin v. Titcomb*, 2013 ME 14, ¶ 7, 60 A.3d 765 ("We . . . interpret a statute to avoid absurd, illogical, or inconsistent results . . . ." (quotation marks omitted)).

The entry is:

> The summary judgments in favor of the Town of Medway and Emery Lee and Sons, Inc., are affirmed.

---

coverage up to the limit contained in section 8105, the governmental entity remains responsible for any liability up to that limit.

**On the briefs:**

Arthur J. Greif, Esq., and Julie D. Farr, Esq., Gilbert & Greif, P.A., Bangor, for appellant Day's Auto Body, Inc.

John J. Wall, III Esq., Monaghan Leahy, LLP, Portland, for appellee Town of Medway

Gerard O. Fournier, Esq., and Heidi J. Hart, Esq., Richardson, Whitman, Large & Badger, Bangor, for appellee Emery Lee and Sons, Inc.

**At oral argument:**

Arthur J. Greif, Esq., for appellant Day's Auto Body, Inc.

John J. Wall, III Esq., for appellee Town of Medway

Gerard O. Fournier, Esq., for appellee Emery Lee and Sons, Inc.

Penobscot County Superior Court docket number CV-2013-156
FOR CLERK REFERENCE ONLY