**STATE OF MAINE**

**Cumberland, ss.**

STATE OF MAINE
Cumberland, ss. Clerk's Office

DEC 19 2017
3:28 P.M.
RECEIVED

**SUPERIOR COURT**

**JEFFREY LIBBY,**

　　　　　**Plaintiff**

　　v.

**Civil Action Docket No. PORSC-CV-16-357**

**CHRISTIAN ROY and**
**THE ROMAN CATHOLIC BISHOP OF PORTLAND,**

　　　　　**Defendants**

## ORDER AND JUDGMENT

Before the court are the Motions for Summary Judgment filed by Defendant Christian Roy and Defendant The Roman Catholic Bishop of Portland ("the Diocese"), together with Plaintiff Jeffrey Libby's opposition to both Motions, and the Defendants' reply memoranda. Oral argument was held November 29, 2017, at which time the court took the Motions under advisement.

Based on the entire record, Defendants' Motions for Summary Judgment are granted, for the reasons set forth below.

### Factual Background

Plaintiff Jeffrey Libby's date of birth is February 20, 1963 (Diocese S.M.F. ¶ 1.) In 1980, Libby moved from Florida to Winslow, Maine and began attending high school while residing with his grandparents. (Diocese S.M.F. ¶¶ 9-11.) In 1986, Libby was convicted of the murder of his grandfather and began serving a 60-year sentence at the Maine State Prison. (Diocese S.M.F. ¶ 84.)

1

The Diocese is the corporation sole that owns and administers the Roman Catholic churches and facilities in Maine, and employs and supervises the priests who serve within the Diocese.

In 1979, Defendant Christian Roy began working as a priest in the Diocese, assigned as associate pastor for St. Ignatius' Parish in Sanford, Maine. (Roy S.M.F. ¶ 1.) In June of 1981, Roy was reassigned to Holy Family Parish in Lewiston, Maine. (Roy S.M.F. ¶ 8.)

Libby alleges that he was subjected to sexual abuse by Roy numerous times in different locations, beginning in 1979 or 1980, while he was a minor, and continuing through 1982, after he had turned 18 years of age. *See* Libby Deposition at 83-85, 95-101.

In June of 1986, Roy was reassigned as pastor to St. Bernard's Parish in Rockland, Maine. (Roy S.M.F. ¶ 9.) While working at St. Bernard's Parish, Roy also served as a part-time chaplain working 12 hours per week at the Maine State Prison. (Roy S.M.F. ¶ 10-11.) Roy continued serving as a part-time prison chaplain until 1991. (Roy S.M.F. ¶ 14.) The Maine State Prison provided Roy with an office and all items necessary for religious services. (Roy S.M.F. ¶ 28.)

During his tenure as prison chaplain, Roy was paid bi-weekly by the State of Maine through direct payroll deposits to his bank account. (Roy S.M.F. ¶ 12-13.) The Diocese did not compensate priests for serving as chaplains in State institutions. (Diocese S.M.F. ¶ 10-11.) As a prison chaplain, Roy participated as a State employee in the Maine Public Employee Retirement System. (*See* Roy S.M.F. ¶ 15.)

Libby alleges that, between 1987 and 1991, while Roy was working as a prison chaplain, Roy subjected him to numerous instances of sexual touching at the State prison, causing significant emotional distress. Libby Deposition at 136-38.

## Procedural History

On September 15, 2016, Libby filed a complaint against Defendants Christian Roy and the Diocese. (Compl. at 1.) In his complaint, Libby alleges that Roy sexually abused him numerous times between 1979 and 1982. (Compl. ¶ 59.) Libby also alleges that Roy continued to inflict emotional distress on him between 1987 and 1991, while Libby was incarcerated at the Maine State Prison. (Compl. ¶¶ 47-48.) He alleges that the Diocese is liable for Roy's actions before and during Libby's imprisonment, based on *respondeat superior* and other theories.

On July 3, 2017, this court granted in part Defendant Roy's motion for judgment on the pleadings. *Libby v. Roy*, No. PORSC-CV-16-357, 2017 Me. Super. LEXIS 135 (July 3, 2017). Based upon the statute of limitations applicable at the time of the alleged abuse, this court entered judgment in favor of Roy as to all claims accruing before Libby's imprisonment. *Id.* at 6. However, the court denied Roy's motion with respect to Libby's claims against Roy arising out of Roy's service as a chaplain at the Maine State Prison.

Thereafter, the Diocese filed its Motion for Summary Judgment on all of Libby's claims against it, and Roy filed his Motion for Summary Judgment on the remaining claims against him.

## Standard of Review

"The function of a summary judgment is to permit a court, prior to trial, to determine whether there exists a triable issue of fact or whether the question[s] before the court [are] solely . . . of law." *Bouchard v. American Orthodontics*, 661 A.2d 1143, 44 (Me. 1995).

Questions of fact must be viewed in a light most favorable to the non-moving party—Plaintiff in this case. However, "summary judgment is appropriate when the portions of the record referenced in the statements of material fact disclose no genuine issues of material fact and reveal that one party is entitled to judgment as a matter of law." *Currie v. Indus. Sec., Inc.*, 2007 ME 12, ¶ 11, 915 A.2d 400. "A material fact is one that can affect the outcome of the case, and a genuine issue exists when there is sufficient evidence for a fact finder to choose between competing versions of the fact." *Lougee Conservancy v. City-Mortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774 (quotation omitted).

## Analysis

### 1. *Plaintiff's Prison-Based Claims against Defendant Christian Roy*

Defendant Roy argues that while serving in his capacity as prison chaplain he was an employee of the State, and that Libby's claims relating to the 1987-91 period are governed by the Maine Tort Claims Act (MTCA). *See* 14 M.R.S. §§ 8101-8118 (2016). Pursuant to the MTCA, claims against an employee of a governmental entity are barred unless a notice of claim is given within 180 days of the accrual of the cause of action, and an action is filed within two years of accrual. *See id.* § 8107 (180-day

4

notice requirement), § 8110 (two-year limitations period). Roy argues that, because Plaintiff never provided the 180-day notice required by the MTCA nor filed suit within the applicable two-year statute of limitations, his claims are time-barred.

Plaintiff Libby does not dispute Roy's contention that he has not met the MTCA notice and filing deadlines. He also does not contend that the MTCA deadlines are tolled by virtue of his imprisonment.[1] Rather, Libby contends that Roy was an independent contractor for the State rather than a State employee. Because the MTCA does not apply to torts committed by independent contractors, *see id.* § 8102, Libby argues that his claims against Roy are not subject to the MTCA notice and limitations provisions.

The MTCA defines the term "employee" in broad terms, as "a person acting on behalf of a governmental entity in any official capacity, whether temporarily or permanently, and whether with or without compensation from local, state or federal funds . . . ." *Id.* § 8102(1). However, the MTCA specifically excludes independent contractors from its definition of employee. *Id.*

Decisions by the Law Court indicate that persons within a wide range of professions and occupations can be deemed State employees for purposes of the MTCA. For instance, in *Kennedy v. State*, the Law Court held that a private attorney acting as a guardian *ad litem* was a State employee for purposes of the MTCA because

---

[1] The tolling statute on its face does not apply to actions under the MTCA, and the MTCA statute does not provide for tolling due to incarceration. *See* 14 M.R.S. §§ 753, 8110. The MTCA two-year limitations period is tolled while the claimant is a minor, and commences to run when the claimant turns 18. *Id.* § 8110.

5

she was "'acting on behalf of' the court in its efforts to determine what would be in the 'best interest of the child'" in a parental rights and responsibilities proceeding. 1999 ME 85, ¶ 12, 730 A.2d 1252 (Me. 1999). Similarly, in *Taylor v. Herst*, the Law Court held that a doctor employed by a private hospital acted "in an official capacity on behalf of the State" when he evaluated a patient brought to him by law enforcement in order to determine whether the patient should have been involuntarily committed. 537 A.2d 1163, 1165 (Me. 1988). *See also Clark v. Maine Medical Center*, 559 A.2d 358, 360 (Me. 1989) (holding that a privately employed doctor was an employee within the meaning of the MTCA where he performed an examination in accordance with state procedures regarding a patient's admission to a state-run hospital).

The Department of Corrections is obligated to offer the services of chaplains, to accommodate the religious practices of prison inmates. *See* 34-A M.R.S.A. §§ 3048, 3236; *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). Hence, while serving in his capacity as part time prison chaplain, Defendant Roy was "acting on behalf of" the Maine Department of Corrections in providing religious services and counseling to prison inmates. As prison chaplain, Roy was acting under the authority of statute as well as under the command of the prison warden. *See* 34-A M.R.S.A. §§ 3231(3)(D), 3236.

However, the Law Court has also indicated that "the common-law distinction between an employee and an independent contractor" also guides the analysis of whether a worker is an employee pursuant to the MTCA. *Day's Auto Body, Inc. v. Town*

*of Medway*, 2016 ME 121, ¶ 17, 145 A.3d 1030. In determining whether a worker is an employee or an independent contractor, the court considers eight factors:

1. The existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price;
2. [the] independent nature of the business or his distinct calling;
3. his employment of assistants with the right to supervise their activities;
4. his obligation to furnish necessary tools, supplies and materials;
5. his right to control the progress of the work except as to final results;
6. the time for which the workman is employed;
7. the method of payment, whether by time or by job;
8. whether the work is part of the regular business of the employer.

*Id.*

Of these eight factors the presence or absence of control over the performance of the work is the most important. *Id.* Here, Libby argues that the Prison had no control over the ceremonies, services, and specific religious instructions provided by Roy, meaning that Roy must be deemed an independent contractor.

However, his argument is contradicted by the fact that prison chaplains are statutorily required to perform their duties according to rules established by the prison. 34-A M.R.S. § 3236(2). The Department of Corrections has an extensive set of rules, procedures and policies governing religious services within Department institutions. *See* 03 201 C.M.R. ch. 10 § 24.3.[2] For instance, the Department retains the authority to determine when and where religious services will be provided as well

---

[2] Plaintiff does not dispute that these procedures were in effect during Defendant Roy's tenure as a prison chaplain.

as the ability to prohibit or modify particular religious items or ceremonies. *Id.* Procedures A & E.

While Roy was serving as prison chaplain, the Maine State Prison warden's duties explicitly stated that "the warden shall have command . . . of all officers and persons employed under him in overseeing, guarding and governing [the prison]." 34-A M.R.S.A § 3231 (1988). Because the prison chaplain is appointed by the warden and is charged with overseeing the prison's religious programs, *see id.* § 3236, the warden's authority to command and control prison officers and employees extends to the chaplain.

Libby contends that Roy cannot be deemed a Maine State Prison employee, because he was a priest, not a corrections officer. Although the Maine State Prison is not a religious entity, the warden is required by statute to appoint a chaplain to oversee the religious needs of the inmates and enable the inmates' free exercise of religion. 34-A M.R.S. § 3236. The prison chaplain is one of the few prison positions specifically described in Title 34-A, Maine Revised Statutes, Chapter 3, Subchapter 2, Article 2, entitled "Prison Officials and Personnel."

Moreover, the absence of any contract between Roy and the Department of Corrections regarding his service indicates that he was an employee rather than an independent contractor. "The term independent contractor presupposes the existence of a binding contract between the parties, for the breach of which a cause of action arises. There can be no relationship of independent contractor without the existence of such binding contract between the parties." *Murray's Case,* 130 Me 181, 186-87, 154

8

A. 352, 354 (1931), *quoting Snodgrass v. Cleveland Co-op. Coal Co.* 31 Ohio App. 470, 167 N.E. 493, 496 (1929). Here, there is no evidence that Roy and the State entered into a contract for a specific project to be completed within a specified time, under which Roy would receive as compensation a predetermined sum that had no relationship to the amount of time Roy spent in performance of his duties.

Instead, the evidence shows that Roy was employed on a part-time basis to provide general religious services for which he was compensated by the State on a bi-weekly basis and through contributions to the Maine Employee Retirement System. Additionally, this relationship existed for five years and ended only when Roy was transferred to another parish by his other employer, the Diocese.

For these reasons outlined above, there is no genuine issue of material fact regarding whether Roy, while serving as prison chaplain, was an employee as defined by the MTCA and is thus covered by the provisions of that Act.

Because Roy was a State employee at the time of the tortious acts Libby alleges he committed at the State Prison; because the MTCA does not include a tolling provision for periods of incarceration, and because Libby did not file his claim within the applicable two-year statute of limitations, Libby's claims against Roy arising out of Roy's service as prison chaplain are time barred. Defendant Roy's Motion for Summary Judgment is granted.

*2. Plaintiff's Claims against The Diocese*

The Diocese has moved for summary judgment on all of Libby's claims against it. The Diocese in its Motion for Summary Judgment raises significant questions as

9

to Libby's veracity and credibility—or lack thereof—pointing to numerous inconsistencies in his accounting of relevant events at various times, and Libby has responded with letters and affidavits regarding his character. However, questions of veracity and credibility are for the factfinder. The question for the court, at this stage of the case, is whether the Diocese has demonstrated that there are no genuine issues of material fact and that it is entitled to judgment on Libby's claims as a matter of law.

a. Plaintiff's Pre-Imprisonment Claims Against the Diocese

Libby's pre-imprisonment claims against the Diocese are subject to the same analysis the court applied to his pre-imprisonment claims against Roy in its July 3, 2017 Order granting judgment to Roy on those claims. Libby's pre-imprisonment claims against both Roy and the Diocese accrued by no later than December 31, 1982, according to Libby's allegations. His subsequent incarceration beginning in 1986 would not operate to toll the statute of limitations as to claims that had accrued before he went to prison, *see* 14 M.R.S. § 753. Assuming the six-year limitations period applies, it would expire, at the very latest, by January 1, 1989.

However, Libby's opposition to the Diocese's motion contends that the Diocese knew or was on notice of Roy's acts of sexual abuse as early as 1979, and that the Diocese concealed its knowledge. The applicable statute provides: "If a person, liable to any action mentioned, fraudulently conceals the cause thereof from the person entitled thereto, or if a fraud is committed which entitles any person to an action, the action may be commenced at any time within 6 years after the person entitled thereto discovers that he has just cause of action . . ." 14 M.R.S. § 859.

10

To prevail on his fraudulent concealment claim at trial, Libby must show both that the Diocese knew of Roy's sexual abuse and concealed the knowledge, such that he could not have discovered it until after he was imprisoned. *See Picher v. Roman Catholic Bishop of Portland*, 2013 ME 99, ¶ 3, 82 A.3d 101.

The Diocese's Motion for Summary Judgment asserts that the Diocese had no knowledge or notice of any sexual abuse by Roy until 1993, well after the last of the alleged acts of abuse. The primary support for this contention is the affidavit of the current Diocese Chancellor, Sister Rita Mae Bissonnette. Her affidavit indicates that she has served as co-Chancellor, Vice-Chancellor or Chancellor of the Diocese since 1986, and in those capacities, she has personal knowledge of the extent to which the Diocese has been on notice of sexual abuse or impropriety by a priest assigned to the Diocese. Independently of her own personal knowledge, her affidavit indicates that she has reviewed pertinent records of the Diocese of which she is the custodian. Based on both her personal knowledge and her review of Diocese records, her affidavit avers that neither she nor anyone else at the Diocese knew of any sexual misconduct or abuse on the part of Roy until March 2, 1993.

Plaintiff Libby's opposition challenges the Diocese's assertion that it lacked any knowledge of Roy's sexual abuse prior to 1993, with two proffered pieces of evidence:

- Another prisoner, Michael Lafollette (or Lafallette), asserts that at some point while Roy was working at the State prison, Roy disclosed that "two years after he became a priest, that his Bishop took his confession because

11

he was acting on his sexual desires to have sex with young males." Affidavit of Michael Lafallette ¶ 11.

- Libby has testified at deposition that he and Roy were in the Diocese thrift shop when the Bishop saw Roy with his arm around Libby's shoulder. The Bishop took Roy's arm from Libby's shoulder and asked Roy if he was behaving himself. Jeffrey Libby Deposition at 106.

The question becomes whether, in light of the Diocese's flat assertion that it knew nothing of Roy's sexual misconduct or abuse prior to 1993, Libby has proffered admissible evidence that raises a genuine issue as to the Diocese's knowledge and therefore is sufficient to defeat the Diocese's motion.

The Lafollette affidavit does not raise such an issue for two reasons. First, it is so vague and general as to require the jury to speculate on what was disclosed to the unnamed Bishop. Second and more conclusively, Lafollette's testimony about what Roy told him would not be admitted into evidence. *See Searles v. Trustees of St. Joseph's Coll.*, 1997 ME 128, ¶ 9 n.2, 695 A.2d 1206, 1210 ("Evidence set forth in an affidavit in opposition to a motion for a summary judgment must be admissible evidence.") Lafollette's testimony would be a party admission outside the hearsay rule if offered against Defendant Roy, but it would not qualify as an admission if offered against the Diocese. *See* M.R. Evid. 801(d).[3]   The statement is inadmissible hearsay as to the

---

[3] For purposes of qualifying as an admission against the Diocese, Lafollette's testimony as to what Roy told him would have to fit within at least one of the five subsections of Rule 801(d). It does not qualify under subsections (A) and (B) because what Roy allegedly disclosed is not a statement by or on behalf of the Diocese, and the Diocese has not been shown to have adopted it.  Subsections (C) and (D) cover statements by employees, agents and other authorized persons, but both specifically exclude statements

12

Diocese, because it is offered for its truth and is not within any exception to the hearsay rule.

The thrift shop incident likewise does not avail Libby for two reasons.

First, the Bishop's response to seeing Roy with his arm around Libby could have meant any number of things and does not establish the Bishop's awareness of sexual abuse by Roy. A fact finder would have to speculate on what was in the Bishop's mind to cause him to respond as he did.

More importantly, even if one assumes that the Bishop's response should be given the obvious meaning and significance that Libby attaches to it, what the Bishop did and said should have made it obvious to Libby himself that the Bishop was aware of sexual misconduct by Roy. Once Libby himself was on notice that the Diocese knew about Roy's misconduct, Libby had a duty to exercise due diligence in discovering his cause of action against the Diocese. *See Drilling & Blasting Rock Specialists, Inc. v. Rheaume*, 2016 ME 131, ¶27, 147 A.3d 824 (stating that "a plaintiff's duty of due diligence is triggered by storm warnings of the possibility of fraud").

Thus, even assuming that the thrift shop incident shows that the Bishop knew of Roy's sexual misconduct, any previous tolling of the statute of limitations due to fraudulent concealment would terminate as of the incident, and the statute would begin to run. Because the thrift shop incident had to have occurred before Libby went

---

made by an employee or agent to the employer or principal, such as Roy's alleged statement to the Bishop. Subsection (E) would require proof of a conspiracy between Roy and the Diocese at the time of the statement and there is no conspiracy alleged or shown.

13

to prison in 1986, the six-year statute of limitations (assuming it applies and was tolled until the thrift shop incident) expired in 1992 at the latest.

For these reasons, the court concludes that Plaintiff's claims against the Diocese accruing before his imprisonment, are time-barred, and that the Diocese is entitled to summary judgment.

b.  Plaintiff's Claims Against the Diocese Accruing During his Imprisonment

The Diocese argues that Libby's claims predicated on Roy's conduct while serving as prison chaplain are governed by the Maine Tort Claims Act, and are now time-barred for the same reasons his prison-based claim against Roy is time-barred. Libby responds that, even if Roy was a State employee entitled to the protections of the MTCA, the Diocese is not covered by the MTCA.

The initial question of law presented by the Diocese's contention that the Maine Tort Claims Act governs Libby's prison-based claims against it is whether the non-governmental employer of a person acting in an official capacity on behalf of a governmental entity is entitled to the protections of the MTCA.   The Law Court has addressed the issue in a different context.   In *Taylor v. Herst*, the plaintiff brought a tort action against a doctor and the doctor's employer, Maine Medical Center, based on the doctor's examination of a patient to determine whether the patient was mentally ill for the purposes of involuntary commitment. 537 A.2d 1163, 1164 (Me. 1988). Because the doctor was acting in an official capacity on behalf of the State in performing the examination, both he and his private employer were entitled to the protections of the MTCA. *Id.* at 1165-166.

14

Similarly, in *Clark v. Maine Medical Center* the plaintiff and her son went to a privately-owned hospital for the purpose of obtaining an examination for admission to a State run mental institution. 559 A.2d 358, 359 (Me. 1989). After the examining doctor denied the plaintiff's son admission, the plaintiff then sued the doctor and the hospital. *Id.* at 359-60. As in *Taylor*, the Law Court held that the doctor was acting in an official capacity on behalf of a governmental entity as a government employee and affirmed the grant of summary judgment for both defendants. *Id.* at 360-61.

In the present case, while Roy was working at the State prison, he was plainly serving in an official capacity for a governmental entity for purposes of the rule of *Taylor* and *Clark*. This case differs from *Taylor* and *Clark*, in that neither addressed the issue of whether the MTCA's two-year limitations period applies to a claim against the private employer of a person who is acting in a governmental capacity and thus is entitled to the protections of the MTCA. However, implicit in *Taylor* and *Clark* is the proposition that the private employer of such a person cannot be held liable if the person is not liable.

Therefore, based upon the Law Court's decisions in *Taylor* and *Clark*, Libby's prison-based claims against the Diocese are subject to the time limitations set forth within 14 M.R.S. § 8110.

Because Libby admittedly did not send any notice of claim or commence his action within two years, as required by the MTCA, his claim is time-barred unless the statute of limitations was tolled. The MTCA statute of limitations does not provide

15

for tolling due to imprisonment or based on fraudulent concealment, *see* 14 M.R.S. § 8110.

The general tolling statute provides for tolling during imprisonment, but it applies only to "actions under sections 752 to 754, including section 752-C, and under sections 851 and 852 and Title 24, section 2902 and, until July 1, 2017, section 2902-B." 14 M.R.S. § 853. Therefore, the court concludes that Libby's imprisonment from 1986 on does not toll the Maine Tort Claims Act statute of limitations, to the extent it governs his claims.

As to tolling based on fraudulent concealment, the Law Court has held that the Maine Tort Claims Act statute of limitations can be tolled for fraudulent concealment, pursuant to 14 M.R.S. § 859. *See Webb v. Haas*, 665 A.2d 1005, 1009 (Me. 1995). However, for the reasons given in the previous section, the court concludes that Libby has not generated a genuine issue as to whether the Diocese fraudulently concealed knowledge of Roy's sexual abuse.

Because Libby's prison-based claims against the Diocese are subject to the Maine Tort Claims Act, because he has not sent any notice of claim or brought his action within two years, *see* 14 M.R.S. § 8110, and because the MTCA statute of limitations is not tolled due to Libby's imprisonment or based on fraudulent concealment, the court concludes that his prison-based claims against the Diocese are time-barred.

c. The Merits of Plaintiff's Claims Against the Diocese

Thus far, the analysis of Libby's claims against the Diocese has focused on statute of limitations issues. But the Diocese is also entitled to summary judgment on alternative grounds—the merits. Its Motion presents admissible evidence, through the affidavit of Sister Rita Mae Bissonnette, that the Diocese had no knowledge of Roy's sexual abuse or misconduct until 1993, well after the last of the incidents of abuse alleged by Libby.

Plaintiff Libby's response to the Diocese's showing does not generate a genuine issue for the fact finder. For the same reasons that the Lafollette testimony and the thrift shop incident do not show fraudulent concealment for purposes of tolling the statute of limitations, they do not raise any genuine issue regarding the Diocese's knowledge of Roy's sexual abuse or misconduct.

Thus, even apart from the bar presented to Libby's claims by the general and Maine Tort Claims Act statutes of limitation, the Diocese has shown that there is no basis on which a reasonable finder of fact could decide that the Diocese had knowledge of sexual abuse or other misconduct by Roy before 1993. Based on that showing, and because none of the alleged acts of abuse occurred after 1991, the Diocese is entitled to judgment as a matter of law on all of Plaintiff's claims.

### Conclusion

It is hereby ORDERED AND ADJUDGED AS FOLLOWS:

1. Defendant The Roman Catholic Bishop of Portland's Motion for Summary Judgment is granted.

2. Defendant Christian Roy's Motion for Summary Judgment is granted.

Judgment on all claims set forth in the Complaint is hereby granted against Plaintiff Jeffrey Libby in favor of the Defendants. Defendants are also awarded their recoverable court costs as prevailing parties.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order and Judgment by reference in the docket.

Dated December 19, 2017

_____
A. M. Horton, Justice

18