MAINE SUPREME JUDICIAL COURT                        Reporter of Decisions
Decision:     2020 ME 8
Docket:       Cum-18-519
Argued:       November 5, 2019
Decided:      January 21, 2020

Panel:        ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.*

## SUSAN HAMILTON

v.

## DRUMMOND WOODSUM et al.

ALEXANDER, J.

[¶1]  This appeal presents two issues for decision: (1) is a report of a neutral investigator, retained to provide a report to a governmental entity in a specific personnel matter, petitioning activity pursuant to 14 M.R.S. § 556 (2018), Maine's anti-Strategic Lawsuit Against Public Participation (anti-SLAPP) statute, and (2) is an employee of a law firm and the law firm itself, when hired to act as an agent of a governmental entity to provide a report on a specific personnel matter, protected by the employee immunity provision of the Maine Tort Claims Act (MTCA), 14 M.R.S. §§ 8108-8118 (2018)?[1]

---

*  Chief Justice Saufley sat at oral argument and participated in the Court's initial conference regarding this opinion immediately following that oral argument, but did not participate further in the consideration or drafting of this opinion.

[1] Portions of the MTCA have since been amended but not in any way that affects this appeal.  *See, e.g.*, P.L. 2019, ch. 214, §§ 1-2 (effective Sept. 19, 2019).

2

[¶2]   The law firm of Drummond Woodsum and its nonattorney employee, Ann Chapman (collectively, DW), appeal from the denial of their motion to dismiss a defamation complaint filed by Susan Hamilton, which was entered by the Superior Court (Cumberland County, *Warren, J.*).[2]

## I.  CASE HISTORY

[¶3]   Because the appeal is from a denial of a motion to dismiss, no evidence has been presented.  Accordingly, we accept Hamilton's pleadings as true and accurate and draw the case history from her second amended complaint. *See Lalonde v. Cent. Me. Med. Ctr.*, 2017 ME 22, ¶ 11, 155 A.3d 426.

[¶4]   From 2005 to 2009, the University of Southern Maine (USM) employed Susan Hamilton as the interim director for USM's Multi-Cultural Student Affairs (MSA).  In 2009, Hamilton became the full-time coordinator of the MSA.

---

[2] We recognize that this appeal is interlocutory, but, because the asserted basis for DW's appeal is its complete or qualified immunity pursuant to the anti-SLAPP law, 14 M.R.S. § 556 (2018), and the MTCA, 14 M.R.S. §§ 8108-8118) (2018), we reach the merits of DW's appeal challenging the denial of its motion to dismiss. *See Hearts with Haiti, Inc. v. Kendrick*, 2019 ME 26, ¶ 8 n.1, 202 A.3d 1189 (stating that an appeal of a denial of a motion to dismiss based on a claim of immunity pursuant to the anti-SLAPP statute is allowed as an exception to the final judgment rule); *Knowlton v. Attorney General*, 2009 ME 79, ¶¶ 10-13, 976 A.2d 973 (stating that an appeal of a denial of a motion for summary judgment based on a claim of sovereign immunity pursuant to the MTCA is allowed as an exception to the final judgment rule).

[¶5] In 2015, a USM student began an internship in Hamilton's program. Sometime after that, another student made a complaint alleging that Hamilton had entered the student government office in October of 2015 and questioned students there about a particular incident on campus. Following the complaint, USM's dean of students met with the student intern to discuss what she observed while working with Hamilton, and she coerced the intern into preparing a written statement about Hamilton. USM initiated a formal investigation, retaining Chapman, a nonattorney policy consultant for Drummond Woodsum, to serve as investigator. USM had frequently retained Chapman to conduct investigations.

[¶6] Chapman presented an investigative report to USM, which concluded that Hamilton "engaged in both discriminatory (race and gender) and non-discriminatory harassment (Student Government) as articulated in USM polices [sic] and procedure." The report concluded that "Ms. Hamilton's statements have created a hostile environment for [the intern] and for other (not all) students and employees."[3]

---

[3] The intern expressly stated—in a subsequent federal lawsuit deposition—that Hamilton never "targeted her because of her race or gender." Chapman's investigative report, however, included interviews with other USM employees and students who presented a negative view of Hamilton's alleged actions.

4

[¶7]   On February 28, 2016, USM's office of equity and compliance forwarded a copy of Chapman's report to USM's vice president for enrollment management.  The next day, USM provided a copy of Chapman's report to Hamilton.   On March 18, 2016, USM's vice president for enrollment management sent a letter to Hamilton indicating that she accepted the report's finding of harassment and discrimination.

[¶8]  On April 4, 2016, Hamilton appealed the vice president's decision to USM's director of equal opportunity.  The director rejected the report's findings of gender-based discrimination but accepted the report's finding of "a hostile work environment based upon race."   The director then sent the report to USM's president.  On April 27, 2016, USM's president sent a letter to Hamilton, partially affirming the report and stating that "[t]here are reasonable grounds to believe you violated the University's harassment policy and created a hostile environment on the basis of race."   On May 31, 2016, USM terminated Hamilton's employment.

[¶9]   On June 15, 2016, Hamilton filed a grievance regarding her termination and served a notice of claim as required by 14 M.R.S. § 8107 within the MTCA.  In her grievance, Hamilton complained that Chapman's "illegal, flawed and biased investigation . . . violated her Due Process rights."  Hamilton

requested that USM reinstate her. On July 21, 2016, Hamilton and representatives of USM met to discuss her grievance. On August 26, 2016, USM denied Hamilton's grievance. On September 8, 2016, Hamilton filed a "step 3 grievance." Again, USM denied Hamilton's claim, asserting that Chapman had conducted a fair investigation.

[¶10] On May 27, 2017, Hamilton filed suit in the United States District Court for the District of Maine against USM, its president, and its office of equity and compliance for alleged violations of her substantive and procedural due process rights, First Amendment retaliation, and breach of contract. *Hamilton v. Univ. of Me. Sys. et al.*, No. 2:17-cv-00191-GZS. On April 3, 2018, the parties settled the federal lawsuit.[4]

[¶11] On February 28, 2018, Hamilton filed an initial complaint in the Maine Superior Court against DW.[5] Ultimately, by second amended complaint, Hamilton asserted the following four counts: (1) defamation, (2) slander or

---

[4] Drummond Woodsum and Chapman were not parties to the federal action. Considering the allegations in the second amended complaint in this action regarding the close relationship between USM's actions and the actions of Drummond Woodsum and Chapman, there may have been an issue as to whether Drummond Woodsum and Chapman were necessary parties to the federal action, *see* Fed. R. Civ. P. 19, and the implications of not joining them as parties. Because the parties do not raise that issue, we do not explore it further.

[5] Hamilton named Drummond Woodsum, Chapman's employer, as a defendant under the *respondeat superior* doctrine. *See DiCentes v. Michaud*, 1998 ME 227, ¶ 11, 719 A.2d 509.

6

libel per se, (3) tortious interference with an advantageous economic relationship, and (4) negligence.

[¶12]  On June 12, 2018, DW filed (1) a special motion to dismiss pursuant to the anti-SLAPP statute, 14 M.R.S. § 556, and (2) a motion to dismiss pursuant to both the immunity provisions of the MTCA, 14 M.R.S. §§ 8110-8111, and the two-year statute of limitations applicable to defamation claims, 14 M.R.S. § 753 (2018).

[¶13]  By its order of November 20, 2018, the court (1) granted DW's motion to dismiss Count 1 (defamation),  Count 2 (slander or libel per se), and Count 3 (tortious interference with an advantageous economic relationship) of the second amended complaint, concluding that those counts were filed out of time pursuant to the applicable statute of limitations, 14 M.R.S. § 753; (2) denied DW's special motion to dismiss pursuant to the anti-SLAPP law; and (3) denied DW's motion asserting immunity pursuant to the MTCA and requesting dismissal.

[¶14]  The court's ruling left pending only Count 4, Hamilton's claim that DW was negligent in preparing and presenting the report.  DW appealed from the court's ruling.  No cross-appeal was filed.  Therefore, the only issues before us are whether the trial court erred in denying the motion to dismiss regarding

Count 4 based on the immunities asserted to be provided by the anti-SLAPP law or the MTCA.

## II.  LEGAL ANALYSIS

### A.    Anti-SLAPP Statute

[¶15]  The anti-SLAPP statute provides, "When a moving party asserts that the civil claims . . . against the moving party are *based on the moving party's exercise of the moving party's right of petition* under the Constitution of the United States or the Constitution of Maine, the moving party may bring a special motion to dismiss."  14 M.R.S. § 556 (emphasis added).  The statute "purports to provide a means for the swift dismissal of such lawsuits early in the litigation as a safeguard on the defendant's First Amendment right to petition." *Gaudette v. Davis*, 2017 ME 86, ¶ 4, 160 A.3d 1190.

[¶16]  In ruling on DW's motion to dismiss based on 14 M.R.S. § 556, the trial court determined that "Chapman was not exercising her right of petition; she was instead submitting her report of an internal investigation that had been commissioned by USM.  As the Law Court pointed out in *Gaudette*, the purpose of the right of petition is to seek redress from government."  This holding of the trial court accurately summarizes the assertions contained in Hamilton's second complaint about the call for and scope of Chapman's actions.  Hamilton

8

claimed that DW and Chapman were retained to provide a report to USM, not as advocacy but as part of an internal personnel matter that would be further processed by USM.

[¶17] The anti-SLAPP statute serves to shield private citizens from frivolous lawsuits meant to stifle their right to petition the government. *See Borough of Duryea v. Guarnieri*, 564 U.S. 379, 388 (2011) ("The right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives . . . ."); *Hearts with Haiti, Inc. v. Kendrick*, 2019 ME 26, ¶ 14, 202 A.3d 1189 ("The purpose of the anti-SLAPP statute is to protect against meritless claims brought to delay, distract, and punish activists for speaking out.") (emphasis omitted)).

[¶18] Because the trial court accurately and correctly determined that the investigative report at issue in this appeal did not constitute petitioning activity within the meaning of the anti-SLAPP statute, we need not reach the additional steps of the anti-SLAPP analysis. The trial court properly denied DW's special motion to dismiss pursuant to 14 M.R.S. § 556.

B.      Maine Tort Claims Act

[¶19] The MTCA provides that, "[n]otwithstanding any liability that may have existed at common law, employees of governmental entities shall be

absolutely immune from personal civil liability" for performing or failing to perform discretionary functions within the scope of employment. 14 M.R.S. § 8111(1)(C). To determine whether a party or entity is a governmental employee pursuant to the MTCA, we look to 14 M.R.S. § 8102(1), which defines an "[e]mployee" as "a person acting on behalf of a governmental entity in any official capacity, whether temporarily or permanently, and whether with or without compensation from local, state or federal funds." *See Day's Auto Body, Inc. v. Town of Medway*, 2016 ME 121, ¶¶ 15-19, 145 A.3d 1030 (concluding that a private construction contractor is a governmental employee entitled to MTCA immunity when acting at the direction of the government and performing a governmental function).

[¶20] The question of whether a person is an employee for purposes of the MTCA is "predominantly a question of law." *Id.* ¶ 15. Although we have characterized the definition of "[e]mployee" in section 8102(1) as "broad," *id.* ¶16, we have determined that it does not include a person or other legal entity acting in the capacity of an independent contractor under contract to the governmental entity, and we have applied a series of common-law distinctions between employees and independent contractors in analyzing each case, *id.* ¶ 17.

[¶21]  The trial court determined that "[w]hether Chapman qualifies as a governmental employee for purposes of the MTCA is a close question that cannot be decided on a motion to dismiss."  In the trial court's view, the pleadings did not resolve whether DW might instead have been acting as an independent contractor in doing the investigation and preparing the report.  Accordingly, the court denied the motion to dismiss based on MTCA immunity.

[¶22]  When considering an appeal from a ruling on a motion to dismiss, we review the legal sufficiency of the complaint de novo and view the complaint in the light most favorable to the plaintiff to determine whether it states the elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory.  *Carey v. Bd. of Overseers of the Bar*, 2018 ME 119, ¶ 19, 192 A.3d 589; *Clifford v. MaineGeneral Med. Ctr.*, 2014 ME 60, ¶ 46, 91 A.3d 567.  Thus, for purposes of our review of the trial court's ruling, we must determine whether Hamilton's second amended complaint, when viewed in the light most favorable to Hamilton, alleges facts showing that DW was a governmental employee.  For the reasons explained below, we conclude that the court erred in determining that DW could have been acting as an independent contractor, and we remand the case for a dismissal of Count 4.

[¶23]   Hamilton's second amended complaint contains the following allegations:

- Chapman "was an employee and or agent of Drummond and at all times relevant acted within the scope of her employment with Drummond."

- Chapman was retained by USM to act as a "neutral investigator."

- "Chapman acted as an independent contractor while continuing to work as an employee for Drummond."

- Chapman's investigation was conducted pursuant to "an agreement between Drummond and USM pursuant to which she billed USM for hours worked."

- "Chapman and USM claim that Chapman served as an independent neutral investigator . . . . USM paid Chapman for the work hours she billed for the investigation.  USM did not deduct any taxes and treated Chapman as an independent contractor for tax purposes."

- "Chapman did not perform a 'neutral investigator.' USM frequently used Chapman to conduct investigations.  Chapman's bias thus obviously sided with USM.  More significantly, throughout the investigation, Chapman covertly communicated with USM's human resources, administration and legal counsel regarding the course of the investigation and to try to uncover negative information about Hamilton's work history."

- "Hamilton, as an employee of USM, was in the bargaining unit represented by the University of Maine Employee Professional Staff Association . . . .  As a result, Hamilton was guaranteed the protections of the collective bargaining agreement ('CBA') providing that Hamilton could not be terminated without 'just cause' and entitled to the procedural due process rights set forth in the University of Maine Equal Opportunity Complaint Procedure."

- "Chapman's investigation did not begin to comply with minimal due process requirements."

- "After her interviews with Chapman, Hamilton could see that Chapman and USM were acting in tandem to build a case to terminate her."

- "After Chapman completed her investigation, she prepared a Draft investigative Report. Despite Chapman allegedly serving an 'independent investigator,' Chapman and USM worked together to review and finalize the Report."

[¶24]  As these allegations demonstrate, Hamilton is and was asserting that DW was retained by USM to perform a neutral investigation pursuant to the collective bargaining agreement referenced in the complaint. Hamilton contends that all of DW's actions were undertaken on behalf of USM.

[¶25]  In similar matters, we have extended governmental employee MTCA immunity to private physicians and staff who provide evaluations and reports as part of statutorily authorized emergency admission or involuntary commitment processes. *See Doe v. Graham*, 2009 ME 88, ¶¶ 14-17, 977 A.2d 391; *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 12, 845 A.2d 1178; *Clark v. Me. Med. Ctr.*, 559 A.2d 358, 360 (Me. 1989); *Taylor v. Herst*, 537 A.2d 1163, 1165 (Me. 1988).

[¶26]  We have also extended MTCA immunity protection to a private individual acting as a guardian ad litem in a judicial proceeding, *Kennedy v. State*, 1999 ME 85, ¶¶ 9, 12, 730 A.2d 1252 (stating that a guardian ad litem essentially functions as the court's investigative agent, not strictly as legal

counsel to a child client), and a private attorney acting as a municipality's attorney, *Preti, Flaherty, Beliveau & Pachios v. Ayotte*, 606 A.2d 780, 782 (Me. 1992) ("Ayotte's designation as an independent contractor in the city's administrative code does not change his status for the purpose of the Tort Claims Act . . . . Ayotte was 'a person acting on behalf of [a] governmental entity in [an] official capacity.'").

[¶27] Most recently, in *Day's Auto Body*, 2016 ME 121, ¶ 19, 145 A.3d 1030, we held that a private construction company gained MTCA immunity protection because it "was a government employee when, at the direction of the Town, it responded to the fire and used its excavator as directed by the Town in the Town's attempt to minimize the damage."

[¶28] As Hamilton alleged, and despite the use of the word "neutral," DW's actions were controlled and directed by USM to a greater extent than the guardian ad litem's investigations in *Kennedy* or the examining and reporting private physicians in the involuntary commitment cases discussed above. Hamilton's complaint establishes that DW was hired to perform a governmental function on behalf of a governmental entity consistent with that governmental entity's contractual and legal obligations. We therefore conclude that, in performing the investigation, DW was acting as a governmental

employee entitled to MTCA immunity pursuant to 14 M.R.S. § 8111 rather than as an independent contractor. The fact that DW is a private entity does not provide DW any less protection than the private construction contractor in *Day's Auto Body*, or the city attorney who was protected, despite the "independent contractor" designation, in *Ayotte*. The key question is not the characterization of the entity claiming immunity, but whether that entity was performing a governmental function on behalf of a governmental entity.

[¶29] Because DW was performing a governmental function on behalf of a governmental entity, here, USM, the trial court erred in denying the motion to dismiss based on MTCA immunity.

The entry is:

> Order on special motion to dismiss on anti-SLAPP statute grounds affirmed. Order on motion to dismiss on MTCA grounds vacated. Remanded with instructions to dismiss Count 4.

Russell B. Pierce, Jr., Esq. (orally), Norman, Hanson & DeTroy, LLC, Portland, for appellants Drummond Woodsum and Ann Chapman

Guy D. Loranger, Esq. (orally), Law Office of Guy D. Loranger, P.A., Old Orchard Beach, for appellee Susan Hamilton