2010 ME 50

**ESTATE OF Shannon J. FORTIER et al.**

v.

**CITY OF LEWISTON et al.**

Supreme Judicial Court of Maine.

Argued: Feb. 10, 2010.

Decided: June 3, 2010.

Edward R. Benjamin, Jr., Esq. (orally), Thompson & Bowie, LLP, Portland, ME, for the City of Lewiston.

E. Chris L'Hommedieu, Esq., Lewiston, ME, for the Estates of Nicholas Babcock and Teisha Loesburg.

Jamie R. Lebovitz, Esq., Nurenberg, Paris, Heller & McCarthy Co., L.P.A., Cleveland, OH, Randall E. Smith, Esq., Terrence D. Garmey, Esq. (orally) *,

* Terrence D. Garmey, Esq., argued orally on behalf of the Estates of Shannon Fortier, Nicholas Babcock, and Teisha Loesburg.

Smith Elliott Smith & Garmey, P.A., Portland, ME, for the Estates of Shannon Fortier and Teisha Loesburg.

Janet T. Mills, Atty. Gen., Christopher C. Taub, Asst. Atty. Gen. (orally), Augusta, ME, for amicus curiae Attorney General.

Robert H. Furbish, Esq., Berman & Simmons, Lewiston, ME, for amicus curiae Maine Trial Lawyers Association.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

Majority: SAUFLEY, C.J., and ALEXANDER, MEAD, and GORMAN, JJ.

Dissent: LEVY, SILVER, and JABAR, JJ.

MEAD, J.

[¶ 1] The City of Lewiston appeals from an order of the Superior Court (Androscoggin County, *Delahanty, J.*) denying its motion for summary judgment in a wrongful death suit brought by the estates of three Lewiston High School students who died in a 2006 plane crash while attending an Air Force Junior Reserve Officer Training Corps (AFJROTC) summer program sponsored by the school. The City's interlocutory appeal is not barred by the final judgment rule because the City raises a claim of immunity pursuant to the Maine Tort Claims Act (MTCA), 14 M.R.S. §§ 8101–8118 (2009). *See Wilcox v. City of Portland,* 2009 ME 53, ¶ 11, 970 A.2d 295, 297–98 (discussing immunity exception to the final judgment rule).[1] Because we agree that the MTCA did not act to remove the City's immunity on these facts,

we vacate the order and remand for entry of a summary judgment in favor of the City.

## I. BACKGROUND

[¶ 2] The following facts are contained in the summary judgment record, viewed in the light most favorable to the three estate plaintiffs (Estates) as the nonmoving parties. *See Tarbox v. Blaisdell,* 2009 ME 123, ¶ 2, 984 A.2d 1273, 1275. Shannon Fortier, Nicholas Babcock, and Teisha Loesburg were students at Lewiston High School (LHS), and were also cadets in the school's AFJROTC program. The AFJROTC program is part of the school curriculum, and the principal of LHS has overall responsibility for its operation. The program is commanded by a retired Air Force officer, in this case Lieutenant Colonel (ret.) Robert Meyer, a career Air Force pilot. In his capacity as Senior Aerospace Science Instructor at LHS, Meyer was an employee of the City of Lewiston at the time of the accident at issue in these suits.

[¶ 3] In June 2006, Shannon, Nicholas, and Teisha attended an AFJROTC one-week summer leadership school. As part of the curriculum, on June 22 they and other cadets participated in orientation flights that Meyer had arranged using an FAA-certified aircraft provided by Twin Cities Air Services (Twin Cities), which operated a flight school at the Lewiston–Auburn airport. The aircraft was piloted by Charlie Weir, an FAA-certified flight instructor and Twin Cities employee.

---

1. Unlike in *Wilcox,* where we held that an interlocutory appeal on a claim of immunity was unjustified, in this case the Superior Court made the factual findings necessary to appellate review of the immunity issue, and the City has established that there is no available insurance coverage apart from the Maine Municipal Association self-insured risk pool, which is available only if the City is not immune pursuant to the MTCA. *See Wilcox v. City of Portland,* 2009 ME 53, ¶¶ 12–14, 970 A.2d 295, 298.

[¶ 4] Viewing the record in the light most favorable to the Estates, before the ill-fated flight took off, Meyer had information that Weir had performed reckless, unsafe maneuvers on other flights, including the flight he piloted immediately preceding the one leading to this suit. Meyer also observed Weir make a landing that he described as unusual. Notwithstanding this information, Meyer allowed the three students to board the flight. The aircraft crashed into Barker Mountain, killing all aboard.

[¶ 5] Fortier's estate filed a wrongful death suit against Twin Cities and the Lewiston School Department. The estates of Babcock and Loesburg filed suit against the Lewiston School Department and the City of Lewiston, which in turn filed a third-party complaint against Twin Cities. One of the theories advanced by the Estates was that Meyer acted negligently in failing to prevent the three students from flying with Weir, given his expertise as a former Air Force pilot and his knowledge of Weir's unsafe flying. The Superior Court consolidated the cases, and later entered an order removing the Lewiston School Department from the suit upon ruling that the City was the proper party. The Babcock and Loesburg estates eventually settled with Twin Cities.

[¶ 6] On March 20, 2009, the City moved for summary judgment, asserting that it was immune from suit pursuant to the MTCA because (1) it was not "using" the Twin Cities aircraft within the meaning of 14 M.R.S. § 8104–A(1)(D) at the time of the crash, and (2) Meyer was performing a discretionary function [2] when he made the decision to allow the three students to fly with Weir. The court held a hearing and later denied the motion in a written decision, rejecting both arguments advanced by the City in support of its immunity claim. This appeal followed.

## II. DISCUSSION

[¶ 7] The MTCA states the general rule that "all governmental entities [3] shall be immune from suit on any and all tort claims seeking recovery of damages." 14 M.R.S. § 8103(1). Exceptions to the general rule are set out in 14 M.R.S. § 8104–A. The exception at issue here provides that:

> Except as specified in section 8104–B, a governmental entity is liable for property damage, bodily injury or death in the following instances.
>
> **1. Ownership; maintenance or use of vehicles, machinery and equipment.** A governmental entity is liable for its negligent acts or omissions in its ownership, maintenance or use of any:
>
> . . . .

---

2. The MTCA provides for immunity in certain situations where a governmental entity would otherwise be liable for its negligent acts:

   § 8104–B. Immunity notwithstanding waiver

   Notwithstanding section 8104–A, a governmental entity is not liable for any claim which results from:

   . . . .

   **3. Performing discretionary function.** Performing or failing to perform a discretionary function or duty, whether or not the discretion is abused and whether or not any statute, charter, ordinance, order, resolution or policy under which the discretionary function or duty is performed is valid or invalid, except that if the discretionary function involves the operation of a motor vehicle, as defined in Title 29–A, section 101, subsection 42, this section does not provide immunity for the governmental entity for an employee's negligent operation of the motor vehicle resulting in a collision, regardless of whether the employee has immunity under this chapter.

   14 M.R.S. § 8104–B (2009).

3. The City of Lewiston is a governmental entity. *See* 14 M.R.S. § 8102(2), (3) (2009).

D. Aircraft, as defined in Title 6, section 3, subsection 5.

14 M.R.S. § 8104-A (2009).

[¶ 8] In construing section 8104-A, we recognize that "the MTCA employs an exception-to-immunity approach rather than an exception-to-liability approach." *Thompson v. Dep't of Inland Fisheries & Wildlife*, 2002 ME 78, ¶ 5, 796 A.2d 674, 676 (quotation marks omitted). Accordingly, our analysis "start[s] from the premise that immunity is the rule and exceptions to immunity are to be strictly construed." *Id.* (quotation marks omitted).

[¶ 9] The Superior Court denied the City's motion for summary judgment after finding that the application of a "plain and common meaning" of the word "use" made it "arguable that the School Department's hiring of an independent contractor to perform orientation flights constituted use, albeit indirect use, of an aircraft within the meaning of the MTCA." The trial court's denial of a motion for summary judgment seeking immunity is reviewed for errors of law. *Jorgensen v. Dep't of Transp.*, 2009 ME 42, ¶ 12, 969 A.2d 912, 916.

[¶ 10] The threshold and ultimately dispositive question of statutory interpretation before us is whether the City was "using" the Twin Cities aircraft within the meaning of the MTCA when it crashed. If so, then further analysis is required; if not, then section 8103(1) declares that the City is immune from suit and ends our inquiry. The first step in answering this threshold question is to recognize that the issue of whether Meyer should have prevented the three students from flying with Weir is relevant to a determination of whether Meyer acted negligently, but irrelevant to the separate question of whether the City was "using" the aircraft in the first instance. When the students' flight took off, the City was either "using" the Twin Cities plane within the meaning of section 8104-A(1)(D) or it was not, regardless of anything Meyer did or failed to do. Accordingly, we set aside any consideration of Meyer's actions and examine de novo what the Legislature meant when it said that "[a] governmental entity is liable for its negligent acts or omissions in *its ownership, maintenance or use* of any ... [a]ircraft." 14 M.R.S. § 8104-A(1)(D) (emphasis added); *see Morrill v. Me. Tpk. Auth.*, 2009 ME 116, ¶ 5, 983 A.2d 1065, 1067 (stating that the interpretation of a statute is a question of law reviewed de novo, and that "[t]he underlying purpose of statutory interpretation is to give effect to the intent of the Legislature" (quotation marks omitted)).

[¶ 11] Although we have not previously addressed this precise question, the task of interpreting a statute is a familiar one that we undertake using well-established principles. We recently observed, "Statutory construction is a holistic process: we construe the whole statutory scheme of which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved." *McPhee v. Me. State Ret. Sys.*, 2009 ME 100, ¶ 23, 980 A.2d 1257, 1265 (quotation marks omitted). Although the Superior Court gave meaning to the word "use" in section 8104-A(1) by employing the definition found in Black's Law Dictionary, we apply the principle of statutory construction just recited to illuminate the meaning of the word "use" by examining other language in the same section.

[¶ 12] Careful analysis of the key clause in section 8104-A(1)—"its ownership, maintenance or use"—provides the necessary illumination. The clause addresses three situations in which the Legislature has decided to waive a governmen-

tal entity's immunity for its negligent acts. The first two necessarily require positive control by the governmental entity involved. Only the governmental entity can have "ownership" of qualifying equipment.[4] 14 M.R.S. § 8104–A(1). Likewise, a governmental entity can only be liable for "*its* negligent acts or omissions" in "*its* . . . maintenance" of equipment if its own employees perform the maintenance, or fail to perform it. *Id.* (emphasis added). If the entity does not perform the maintenance itself, then any negligent act is not its negligent act resulting from *its* deficient maintenance.[5] In both instances the governmental entity exercises actual, physical control over the equipment—it owns it or its employees maintain it.

[¶ 13] It would make little sense for the Legislature to specify two categories of potential liability requiring actual control of equipment by a governmental entity and then make the "use" category so expansive as to include virtually any direct or indirect employment of motor vehicles, aircraft, watercraft, snowmobiles, or other equipment implicated by the statute, regardless of ownership and regardless of whether the governmental entity has any control over how the equipment is maintained or operated.

[¶ 14] That is, however, precisely what the Estates urge us to conclude. In their view, the City "used" the Twin Cities aircraft for MTCA purposes simply by paying for three seats on it, even though the City did not own or maintain the plane, or train, test, or employ its pilot. Logically, the same conclusion would result from the City's purchase of three seats on a commercial airline flight,[6] or from the City's use of a private ferry for seaborne transportation. The Estates' attempt to obscure this inescapable result and its implications[7] by conflating the question of the City's "use" of the aircraft with the ques-

---

4. Section 8104–A is applicable to motor vehicles, special mobile equipment, trailers, aircraft, watercraft, snowmobiles, and "other machinery or equipment." 14 M.R.S. § 8104–A(1)(A)–(G).

5. If, for example, maintenance is contracted out, then by statute it is not performed by a government employee. *See* 14 M.R.S. § 8102(1) (2009) ("[T]he term 'employee' does not mean a person or other legal entity acting in the capacity of an independent contractor under contract to the governmental entity.").

6. At oral argument, the Estates argued that the City would be "using" a commercial air carrier for purposes of the MTCA if it put students on a flight for a school trip.

7. The doctrine of sovereign immunity embodied in the MTCA relieves the State from the costly and time-consuming burden of defending itself at trial against tort claims, except in those cases where the Legislature has explicitly waived immunity. 14 M.R.S. § 8103(1) (2009). The Estates correctly argue that an expansive reading of the word "use" in section 8104–A(1) would not automatically result in liability for governmental entities unless a plaintiff could also prove negligence at trial. However, that argument glosses over the reality that if "use" is read as broadly as the Estates urge, then in any suit where a plaintiff could establish a governmental entity's utilization of an aircraft, watercraft, motor vehicle, or other equipment to which the statute applies, in virtually any way, the entity could not prevail in a motion to have the suit dismissed on the ground of immunity; it would then be required to go to trial and defend against the allegation of negligence. The specter of using public resources to defend against tort claims undoubtedly explains in part why the Legislature makes specific exceptions to the general rule of immunity instead of making exceptions to a general rule of liability. *See Thompson v. Dep't of Inland Fisheries & Wildlife*, 2002 ME 78, ¶ 5, 796 A.2d 674, 676. Because we must give effect to the Legislature's explicit intent that immunity be waived only on a limited basis, we strictly construe the exceptions set out in the MTCA, including the section 8104–A(1)(D) exception for the "use of any . . . [a]ircraft" at issue here. *See id.*

tion of Meyer's alleged negligence is, as we have explained, unavailing. They are two separate and distinct questions, and the use question must be answered first.[8]

[¶ 15] Given the more restrictive meanings of "ownership" and "maintenance" in the same clause, and our obligation to strictly construe exceptions to immunity, we hold that, in providing for liability resulting from negligence in the "use of any . . . [a]ircraft," 14 M.R.S. § 8104–A(1)(D), the Legislature intended to waive immunity in situations where a governmental entity has some measure of direct control over the aircraft or its pilot. Obvious examples would include situations where Maine Warden Service or Maine State Police aircraft are flown by wardens or troopers. Other qualifying scenarios may be possible, and we do not today attempt to define the precise limits of what is covered by the section 8104–A(1)(D) exception. Given that the City had no direct control over the Twin Cities aircraft or its pilot, the exception is not applicable in the case at bar. Accordingly, the general rule of section 8103(1) controls and declares that the City is immune from the Estates' suits.

[¶ 16] Because we conclude that section 8104–A(1) does not act to remove the City's immunity from suit, we do not reach the City's argument that it is also immune because Meyer was performing a discretionary function. *See* 14 M.R.S. § 8104–B(3).

The entry is:

Order denying motion for summary judgment vacated. Remanded for entry of summary judgment for the City of Lewiston.

SILVER, J., with whom LEVY and JABAR, JJ., join, dissenting.

[¶ 17] Today, the Court further narrows the applicability of the MTCA by ignoring the plain meaning of the word "use" and substituting its own meaning of a commonly used word. The Court equates "use" with "ownership" and "maintenance." Unfortunately, this interpretation will have far-reaching consequences.

[¶ 18] Under the majority's construction, in order to "use" an aircraft under the MTCA, the governmental entity must control how the aircraft is maintained or operated. This means either that "use" is synonymous with ownership and maintenance, or that "use" means "operation." Either interpretation contradicts the plain

---

8. The Estates also point to the definition of the term "operation of aircraft" contained in the Maine Aeronautics Act, 6 M.R.S. § 3(24) (2009), as support for their assertion that the City was "using" Twin Cities' aircraft within the meaning of the MTCA. For several reasons, it is apparent that the definition of "operation of aircraft" in Title 6 does not control our construction of the phrase "use of any aircraft" in the MTCA. First, if the Legislature had intended to use a specific Title 6 definition to define "use of any . . . [a]ircraft" in section 8104–A(I)(D), it could have simply referenced it, just as it explicitly referenced the Title 6 definition of the word "aircraft." 14 M.R.S. § 8104–A(1)(D). Second, Title 6 has the specific and specialized purpose of regulating the conduct of aeronautical activities in Maine. 6 M.R.S. § 2 (2009). Nothing in Title 6 indicates that it is intended to affect when a governmental entity may be sued for participation in aeronautical activities; that determination is reserved to the MTCA. *See* 14 M.R.S. § 8103(1) (providing that a claim for damages may be brought "[w]hen immunity is removed *by this chapter* . . . ." (emphasis added)). Finally, the plain language of 6 M.R.S. § 3(24) states that "[a]ny person who causes or authorizes the operation of aircraft . . . *in the capacity of owner, lessee or otherwise* . . . shall be deemed to be engaged in the operation of aircraft *within the meaning* of [this Act]." (Emphasis added). Accordingly, by its terms the definition applies to owners and operators of aircraft, not to entities that pay for seats on them, and even then it applies only for purposes of the Act.

language of the Act and may be read as extending the cloak of immunity to virtually every instance in which the government contracts with third-parties to provide transportation services.

[¶ 19] Title 14, section 8104–A provides:

### § 8104–A. Exceptions to immunity

Except as specified in section 8104–B, a governmental entity is liable for property damage, bodily injury or death in the following instances.

**1. Ownership; maintenance or use of vehicles, machinery and equipment.** A governmental entity is liable for its negligent acts or omissions in its ownership, maintenance or use of any:

    A. Motor vehicle, as defined in Title 29–A, section 101, subsection 42;

    B. Special mobile equipment, as defined in Title 29–A, section 101, subsection 70;

    C. Trailers, as defined in Title 29–A, section 101, subsection 86;

    D. Aircraft, as defined in Title 6, section 3, subsection 5;

    E. Watercraft, as defined in Title 12, section 1872, subsection 14;

    F. Snowmobiles, as defined in Title 12, section 13001, subsection 25; and

    G. Other machinery or equipment, whether mobile or stationary.

The provisions of this section do not apply to the sales of motor vehicles and equipment at auction by a governmental entity.

14 M.R.S. § 8104–A (2009).

[¶ 20] "Use" must have an independent meaning from "ownership" or "maintenance," or it would be mere surplusage. *See Linnehan Leasing v. State Tax Assessor*, 2006 ME 33, ¶ 21, 898 A.2d 408, 413 (applying "our rule of construction that we will not treat any provision of a statute as surplusage when a reasonable construction of a statute can provide meaning to each provision"). In determining the definition of the word "use" in the statute, we look to its plain meaning. *See Me. Sch. Admin. Dist. No. 37 v. Pineo*, 2010 ME 11, ¶ 16, 988 A.2d 987, 993. "A use is the application or employment of something for some purpose." *Uliano v. Bd. of Envtl. Prot.*, 2009 ME 89, ¶ 18, 977 A.2d 400, 409 (interpreting the Natural Resources Protection Act) (quotation marks omitted). "Use" does not mean "operate," but rather has a broader definition, and this Court has noted that the choice of the word "using," as opposed to "operating," in a contract "reflects a recognition that one may use a motor vehicle without operating it." *Craig v. Estate of Barnes*, 1998 ME 110, ¶ 11, 710 A.2d 258, 261; *see also Allstate Ins. Co. v. Lyons*, 400 A.2d 349, 352 (Me.1979) (noting, in the context of an insurance contract, the "choice of the word '*use*' as distinguished from the word '*operation*,'" and agreeing that "the words use and operation are not synonymous.... Use is ... broader than operation") (quotation marks omitted); *id.* at 353 (discussing the "dispositive nature of [the] choice of terms").

[¶ 21] The United States Supreme Court as well has held the word "use" to mean "active employment," and in the context of a firearm found that to include not only operation as a weapon, but the broader activities of brandishing and bartering with the firearm. *See Bailey v. United States*, 516 U.S. 137, 143, 146, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), *superseded by statute*, Act to Throttle Criminal Use of Guns, Pub.L. No. 105–386, § 1(a), 112 Stat. 3469 (1998) (codified at 18 U.S.C.S. § 924(c)(1) (LexisNexis 2005)). This definition is consistent with the common meaning of the word described in both legal and non-legal dictionaries. *See* Black's Law

Dictionary 1681 (9th ed. 2009) (defining "use" as "[t]he application or employment of something"); American Heritage Dictionary 1331 (2d ed. 1985) (defining "use" as "[t]o bring or put into service; employ").

[¶ 22] If the Legislature had intended "use" to mean something narrower than the common definition, it would have used the word "operation," as it did in the Maine Aeronautics Act, referencing the "operation of aircraft." *See* 6 M.R.S. § 3(24) (2009). The majority discusses this statute but misses the point that it shows that the Legislature knows how to use the word "operation" as opposed to the word "use" when a different meaning is intended. Therefore, the Legislature's choice of the word "use" in the MTCA encompasses activities beyond those where a government employee is actually operating the aircraft. Here, in the words of the majority, the City conducted its AFJROTC orientation program "using an FAA-certified aircraft." This is a "use" of an aircraft as provided for in the statute.

[¶ 23] The majority raises the example of a city purchasing seats on a commercial airliner to suggest the possible expansive result of interpreting "use" according to its plain meaning. This example is misleading for two reasons. First, the MTCA requires not only use of the aircraft, but also negligence by the City in that use, in order to impose liability. *See* 14 M.R.S. § 8104–A(1) ("A governmental entity is liable for *its negligent acts or omissions in its . . . use . . . .*") (emphasis added). Therefore it is extremely unlikely that a governmental entity would be liable for an accident involving a commercial airliner because, in most contexts, allowing stu-

dents to board a commercial flight would not be a negligent act. Here, in contrast, the City chartered the aircraft, potentially had information that such use would be dangerous, and allowed the students to board the plane anyway. This potentially negligent use subjects the City to a claim under the MTCA.[9]

[¶ 24] Second, this Court is tasked with interpreting the statute as written, not with finding a meaning that will avoid an increase in liability. We have always followed the plain meaning of statutes, *see, e.g., Pineo*, 2010 ME 11, ¶ 16, 988 A.2d at 993, and the majority's interpretation departs from this cardinal rule of statutory interpretation.

[¶ 25] It is common for local governments to contract with independent operators to provide transportation services as well as to perform activities such as garbage collection or street maintenance. Government employees may nonetheless be directly involved in the use of the vehicle associated with those services, and those employees should not be exempted from liability for their negligence. For example, a local official who has reason to believe that a school bus driver employed by a private operator is intoxicated should be expected to take steps to prevent the students from boarding the bus. Under the majority's approach, the local official's negligence would be deemed not to fall within the MTCA's unambiguous exception to immunity for a government's "negligent acts or omissions in its . . . use of any . . . [m]otor vehicle." 14 M.R.S. § 8104–A(1)(A). The majority's construction of the MTCA, by extending governmental immunity to situations where a governmental

---

9. This result is consistent with our focus "on the risk of harm naturally or directly caused by the vehicle's contact with the general public." *See Thompson v. Dep't of Inland Fisheries & Wildlife*, 2002 ME 78, ¶ 8, 796 A.2d 674, 677. Here, the City's negligent use resulted in deaths from a crash, which is a harm that "flow[s] naturally" from the negligent use of an aircraft. *See id.* ¶ 7, 796 A.2d at 676–77.

unit "leases out" its functions, renders the law outmoded and unresponsive to the frequency with which governments contract for transportation services in today's economy. This could not be intended by our Legislature.

[¶ 26] In this case, the City was using the aircraft when the accident occurred, and it was within the context of that use that Colonel Meyer is alleged to have acted negligently. For these reasons, I would hold that there is no governmental immunity for the City of Lewiston.