

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-2018-525

JOSHUA BROWN,

      Plaintiff,

    v.

NORTRAX, INC., CODY CRAIG,
and MAINE TURNPIKE
AUTHORITY,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

ORDER ON DEFENDANT MAINE
TURNPIKE AUTHORITY'S BILL OF
COSTS

Before the Court is Defendant Maine Turnpike Authority's ("MTA") Bill of Costs. For the following reasons, the Court awards costs totaling $4,454.10 to MTA.

## I.    Background

This matter arises from a motor vehicle accident that occurred in the vicinity of Exit 48 of the Maine Turnpike on January 20, 2017 ("the Accident"). (J.S.U.F. ¶¶ 1, 3.) Plaintiff Joshua Brown filed this suit for personal injuries he sustained in the Accident. In Count III of his Complaint, Mr. Brown alleged that MTA "improperly set up signage and warnings of construction," leading to the Accident. (Compl. ¶¶ 12-13.) Defendants Cody Craig and Nortrax, Inc. (collectively, the "Nortrax Defendants") brought a crossclaim against MTA for indemnity and/or contribution.

MTA moved for summary judgment on the basis that it is immune from suit under the Maine Tort Claims Act, 14 M.R.S. §§ 8101-8118 ("MTCA"), which bars Mr. Brown's claim and the Nortrax Defendants' crossclaim. On March 29, 2022, the Court entered summary judgment in favor of MTA on the issue of its immunity from suit. On April 8, 2022, MTA submitted its Bill of Costs pursuant to 14 M.R.S. § 1502-D and M.R. Civ. P.

54(d), which Mr. Brown and the Nortrax Defendants have opposed. MTA requests that the Court award the following costs:

| Filing fees | |
|---|---:|
| Motion for summary judgment | $225.00 |
| **Deposition Costs** | |
| John Cannell<br>4/30/19 Deposition Transcript | $323.70 |
| Joshua Brown<br>6/14/19 Deposition Transcript | $226.55 |
| Cody Craig<br>8/22/19 Deposition Transcript | $249.00 |
| 8/15/19 Deposition Transcript | $345.85 |
| John Cannell and William Thompson<br>8/12/19 Deposition Transcript | $384.00 |
| Jeffrey Nadeau<br>9/27/19 Deposition Transcript | $199.50 |
| 8/17/21 Deposition Transcript and Court Reporter Appearance Fee | $290.05 |
| Dr. Stephen Bamberger<br>10/12/20 Deposition Transcript | $222.90 |
| Brian Taddeo<br>8/13/21 Deposition Transcript and Court Reporter Appearance Fee | $330.00 |
| Ralph Norwood<br>9/7/21 Deposition Transcript | $217.50 |
| 11/18/21 Deposition Transcript | $357.50 |
| Richard McAllister<br>Deposition Preparation Expert Fees | $1583.24 |
| 10/22/21 Deposition Transcript | $277.55 |
| William Howerton<br>11/16/2021 Deposition Transcript and Court Reporter Appearance Fee | $805.00 |

MTA supports its Bill of Costs with documentation of each requested cost, as well as the affidavit of Attorney Stouder.

## II. Legal Standard

M.R. Civ. P. 54(d) provides: "Costs shall be allowed as of course to the prevailing party, as provided by statute and by these rules, unless the court otherwise specifically directs." "In order to determine who has prevailed, the trial court 'must look at the lawsuit as a whole to determine which party was the winner and which the loser.'" *Landis v. Hannaford Bros.*, 2000 ME 111, ¶ 6, 754 A.2d 958 (quoting *Dodge v. United Servs. Auto. Ass'n*, 417 A.2d 969, 975 (Me. 1980)) (quotation marks omitted). Pursuant to 14 M.R.S. § 1502-D, the prevailing party must submit a bill of costs "not later than 10 days after entry of judgment."

Regarding allowable deposition costs, M.R. Civ. P. 54(g) provides:

> The taxing of costs in the taking of depositions shall be subject to the discretion of the court. No costs shall be allowed unless the court finds that the taking of the deposition was reasonably necessary, whether or not the deposition was actually used at trial. Taxable costs may include the cost of service of subpoena upon the deponent, the reasonable fee of the officer before whom the deposition is taken, the stenographer's reasonable fee for attendance, and the cost of the original transcript and one copy of the testimony or such part thereof as the court may fix and, for depositions used at trial in lieu of live testimony, a reasonable fee for appearance by any expert and costs incident to preparing, editing and presenting the deposition at trial.

Pursuant to 16 M.R.S. § 251, the Court may also allow costs for an expert witness's attendance at trial. However, costs for an expert witness's attendance at a deposition or any proceeding other than a trial are not allowable. *Landis*, 2000 ME 111, ¶ 13, 754 A.2d 958 ("[T]he cost of an expert witness for attending a deposition is not allowable."); *Oliver v. E. Me. Med. Ctr.*, 2018 ME 123, ¶ 44, 193 A.3d 157 (holding that the Superior Court did not err by denying the prevailing party's request for an award of expert witness costs generated by a prelitigation panel proceeding).

## III. Discussion

Mr. Brown and the Nortrax Defendants raise three issues concerning MTA's Bill of Costs. First, they argue that MTA has submitted its Bill prematurely. Second, they argue that certain costs sought by MTA are not allowable. Finally, they dispute whether and how the Court should apportion costs among them. The Court will address each issue in turn.

### A. Timeliness

Mr. Brown contends that MTA has brought its Bill of Costs prematurely because MTA is not yet a "prevailing party." Because Mr. Brown's claims against the Nortrax Defendants remain pending, he asserts that the Court's entry of summary judgment in MTA's favor is not a final judgment. Mr. Brown argues that MTA cannot be a prevailing party if the Court has not yet entered final judgment.

This argument is unavailing. Neither Rule 54(d) nor 14 M.R.S. § 1502-D specifically limit their application to a final judgment. Moreover, MTA is clearly a prevailing party at this juncture because the Court entered summary judgment in MTA's favor on the issue of its immunity under the MTCA, which bars the only claim and crossclaim against it. *Cf. Me. Sch. Admin. Dist. No. 35 v. R.*, 321 F.3d 9, 16 (1st Cir. 2003) (stating that a defendant who wins "a clear-cut victory on the sole issue" may qualify as a "prevailing party" for the purpose of an attorney's fees award pursuant to 42 U.S.C. § 1988 even in absence of final judgment).

### B. Allowable Costs

The fee for filing MTA's Motion for Summary Judgment is, of course, recoverable. *See* 14 M.R.S. § 1502-B(1). In its discretion, the Court may also allow appropriate deposition costs. Mr. Brown and the Nortrax Defendants oppose: (1) transcript costs for

depositions taken by parties other than MTA, and (2) costs associated with deposition preparation by Richard McCallister, MTA's expert witness.

As set out above, MTA seeks its costs of obtaining copies of the transcripts from thirteen depositions. Because Rule 54(g) commits to the Court's discretion "the taxing of costs in the *taking* of depositions," the Nortrax Defendants contend that MTA is not entitled to costs associated with depositions that it did not take. This is an overly narrow reading of the rule. Reading Rule 54(g) in conjunction with Rule 54(d), which broadly provides that "[c]osts shall be allowed as of course to the prevailing party," it is apparent that "costs in the taking of depositions" are not limited to costs of depositions noticed or taken by the prevailing party. *See* M.R. Civ. P. 54(g) Advisory Committee's Note to 1975 amend., Dec. 1975 ("As a practical matter, in most cases the attorney for either party, whether or not he is taking the deposition, needs to have a copy of the transcript in order adequately to prepare for trial."); *Packard v. Cent. Me. Power Co.*, CV-80-453, 1984 Me. Super. LEXIS 157, at *8-10 (Sept. 20, 1984) (allowing costs of copies of all depositions and other costs associated with depositions initiated by the defendant).

Obtaining a copy of all deposition transcripts was reasonably necessary for preparing MTA's motion for summary judgment. Neither party disputes, and the Court finds, that the depositions taken by MTA—Mr. Craig; Dr. Bamberger, Mr. Brown's medical expert; and William Howerton, the Nortrax Defendants' liability expert—were reasonably necessary. The Court will allow the costs of one copy of each deposition transcript and reasonable court reporter appearance fees incurred by MTA.

However, the Court cannot allow the cost of MTA's expert witness's preparation for his deposition because the deposition was not used at trial in lieu of live testimony. *See* M.R. Civ. P. 54(g); *Landis*, 2000 ME 111, ¶ 13, 754 A.2d 958. Accordingly, costs are awarded as follows:

| Filing fees | $225.00 |
|---|---|
| Deposition Costs | $4229.10 |
| **Total** | **$4454.10** |

### C. Apportionment of Costs

Mr. Brown argues that the Nortrax Defendants should "bear the brunt" of any costs awarded to MTA because the Nortrax Defendants noticed most of the depositions and took more cumulative testimony than Mr. Brown. The Nortrax Defendants argue that any costs should be allocated "equally."

By obtaining summary judgment in its favor, MTA simultaneously prevailed against Mr. Brown's claim and the Nortrax Defendants' crossclaim. Although the Nortrax Defendants may have driven up MTA's costs, Mr. Brown initiated this action. Moreover, Mr. Brown does not claim that financial hardship justifies reducing his liability for MTA's costs. *See* 14 M.R.S. § 1502-D. Accordingly, Mr. Brown, Mr. Craig, and Nortrax, Inc. are jointly and severally liable for the entirety of the costs awarded to MTA. *See Suero-Algarin v. Caguas*, No. 1:14-cv-01508-SCC, 2021 U.S. Dist. LEXIS 130397, at *7-8 (D.P.R. July 13, 2021) ("Joint and several liability for costs is the general rule unless equity otherwise dictates."); *Concord Boat Corp. v. Brunswick Corp.*, 309 F.3d 494, 497 (8th Cir. 2002) (same); *In re Paoli R. Yard PCB Litig.*, 221 F3d. 449, 469 (3d Cir. 2000) ("We read the sparse case law surrounding this issue as placing the burden on the losing parties to introduce evidence and persuade the court that costs should be apportioned, and in the event that they fail to do so, the default rule is that costs may be imposed jointly and severally.").

### IV. Conclusion

For the foregoing reasons, the Court awards MTA $225.00 for filing fees and $4,229.10 for its deposition costs. The Court disallows MTA's costs of its expert witness's preparation for deposition because the deposition was not used at trial.

The entry is:

> Maine Turnpike Authority's Bill of Costs ALLOWED IN PART as set forth above. MTA is awarded costs of $4,454.10, for which Plaintiff Joshua Brown and Defendants Cody Craig and Nortrax, Inc. are jointly and severally liable.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: _6/8/2022_

_____
MaryGay Kennedy, Justice
Maine Superior Court

Plaintiff-Sheldon Tepler, Esq.
Defendant Nortrax and Craig-Martha Gaythwaite, Esq.
Defendant MTA-Elizabeth Stouder, Esq.

REC'D CUMB CLERKS OF(
JUN 10 '22 AM8:14

Entered on the Docket: _06/22/22_
mc✓

STATE OF MAINE                                          SUPERIOR COURT
CUMBERLAND, ss.                                         CIVIL ACTION
                                                        Docket No. CV-2018-525

JOSHUA BROWN,                    )
                                 )
            Plaintiff,           )
                                 )
     v.                          )          **ORDER ON DEFENDANT MAINE**
                                 )          **TURNPIKE AUTHORITY'S**
NORTRAX, INC., CODY CRAIG,       )          **MOTION FOR SUMMARY**
and MAINE TURNPIKE               )          **JUDGMENT**
AUTHORITY,                       )
                                 )
            Defendants.          )
                                 )

Before the Court is Defendant Maine Turnpike Authority's ("MTA") Motion for

Summary Judgment. The motion is opposed by Plaintiff Joshua Brown and Defendants

Nortrax, Inc. ("Nortrax") and Cody Craig (Nortrax and Mr. Craig collectively, "the

Nortrax Defendants"). For the following reasons, the Court grants MTA's motion.

I.     **Facts**

       The following facts are drawn from the parties' Joint Stipulation of Undisputed

Facts and the parties' statements of material facts. Denials and qualifications are noted

when relevant.

       This matter arises from a motor vehicle accident that occurred in the vicinity of

Exit 48 of the Maine Turnpike ("the Turnpike") on January 20, 2017 ("the Accident").

(J.S.U.F. ¶¶ 1, 3.) On the day of the Accident, an independent contractor, CLT, was

working adjacent to the Turnpike in the vicinity of Exit 48. (Def. MTA's S.M.F. ¶¶ 26, 30,

REC'D CUMB CLERKS OFC
MAR 29 '22 AM10:58

32.)[1] Specifically, CLT was clearing trees within a hundred feet of the center line of the Turnpike. (Def. MTA's S.M.F. ¶ 27.) The right lane and acceleration lane had to be closed to allow the movement of equipment to and from the site. (Nortrax Defs.' Add. S.M.F. ¶ 16.)[2] Accordingly, MTA employees had set up a lane closure on the northbound side of the Turnpike, in the vicinity of Exit 48, earlier that morning. (J.S.U.F. ¶ 2.) MTA's work at the site consisted of placing appropriate signs, cones, and a truck-mounted attenuator on the Turnpike, and directing traffic. (Def. MTA's S.M.F. ¶¶ 33, 36-37.)[3]

The purposes of CLT's work were to remove obstructions from the "clear zone" next to the Turnpike and allow more sunlight to reach the road, which increases visibility of animals near the roadway and decreases the amount of salt needed. (Def. MTA's S.M.F. ¶ 31.) Additionally, the tree clearing was the first stage in a project to widen the Turnpike. (Nortrax Defs.' Add. S.M.F. ¶ 5.)

Shortly before the Accident, Mr. Brown was driving in the right lane on the Turnpike. (Def. MTA's S.M.F. ¶ 7.)[4] He moved to the left lane after seeing traffic cones and signs warning drivers of the lane closure. (Def. MTA's S.M.F. ¶ 8.) Once in the left lane, a car in front of Mr. Brown's car stopped, so Mr. Brown stopped. (Def. MTA's S.M.F. 9.) He was stopped for about twenty to thirty seconds. (Nortrax Defs.' Add. S.M.F. ¶ 8.) In his mirror, he saw a truck approaching from behind. (Def. MTA's S.M.F. ¶ 10.) To

---

[1] Mr. Brown denies paragraphs 25-32 of MTA's Statements of Material Fact. However, the record citations provided do not contain evidence refuting the statements of material fact. Accordingly, each of those facts is deemed admitted. M.R. Civ. P. 56(h)(4).

[2] In the same statement of material fact, the Nortrax Defendants also stated that the lane needed to be closed to allow removal of trees and brush from the project. However, this portion of the statement was not properly supported by the cited portions of the record.

[3] Mr. Brown responds to paragraphs 36-44 of MTA's Statements of Material Fact with qualifications that are unsupported by citation to the record. Accordingly, each of those facts is deemed admitted by Mr. Brown. M.R. Civ. P. 56(h)(4).

[4] Mr. Brown responds to paragraphs 6-24 of MTA's Statements of Material Fact with qualifications that are unsupported by citation to the record. Accordingly, each of those facts is deemed admitted by Mr. Brown. M.R. Civ. P. 56(h)(4).

avoid collision, Mr. Brown steered his vehicle to the right, but the truck driver also steered to the right and collided with the rear of Mr. Brown's vehicle. (Def. MTA's S.M.F. ¶¶ 15-16.) The driver of the truck was Mr. Craig, and the owner of the truck was Mr. Craig's employer, Nortrax. (Def. MTA's S.M.F. ¶¶ 18-19.)

When the Accident occurred, MTA employees were in the process of taking down the lane closure. (J.S.U.F. ¶ 3.) CLT swept the roadway clean. (Nortrax Defs.' Add. S.M.F. ¶¶ 17-18; MTA's Resp. Nortrax Defs.' Add. S.M.F. ¶ 18.)[5] An MTA employee drove an MTA vehicle in reverse in the closed right lane, picking up cones. (Def. MTA's S.M.F. ¶ 38.) At the time of the Accident, the MTA truck was in the right lane (which was still closed), and the MTA attenuator vehicle was on the right shoulder. (Def. MTA's S.M.F. ¶ 39.) Mr. Craig did not hit either of the MTA vehicles in the right lane before he hit Mr. Brown's vehicle. (Def. MTA's S.M.F. ¶42.)

Two employees of MTA testified that they had no reason to disagree with characterizing the area in which the Accident occurred as an "active work zone," and a construction and engineering expert retained by the Nortrax Defendants testified that, in his opinion, the Accident happened in an "active construction zone." (Pl.'s Add. S.M.F. ¶¶ 1-2.)

Mr. Brown filed this suit for personal injuries he sustained as a result of the Accident. In Count III of his Complaint, Mr. Brown alleges that MTA "improperly set up signage and warnings of construction," leading to the Accident. (Compl. ¶¶ 12-13.) The Nortrax Defendants filed a cross-claim against MTA for contribution and/or

---

[5] Although the Nortrax Defendants' statements of material fact specify that brush was being removed by the sweeping equipment, the cited portion of the record does not state what was being swept from the lane. As qualified by MTA and as reflected in the cited portion of the record, CLT operated the sweeping equipment.

indemnification. MTA moves for summary judgment on the grounds that it is immune from suit under the Maine Tort Claims Act, 14 M.R.S. §§ 8101-8118 ("the MTCA").

## II. Legal Standard

A party is entitled to summary judgment when review of the parties' statements of material facts and the record to which the statements refer demonstrates that there is no genuine issue as to any material fact in dispute, and that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. A contested fact is material if it could potentially affect the outcome of the case. *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821. A genuine issue of material fact exists if the claimed fact would require a factfinder to "choose between competing versions of the truth." *Id.* (quoting *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, ¶ 9, 878 A.2d 504). The evidence offered in support of a genuine issue of material fact "need not be persuasive at that stage, but the evidence must be sufficient to allow a fact-finder to make a factual determination without speculating."[6] *Est. of Smith v. Cumberland County*, 2013 ME 13, ¶ 19, 60 A.3d 759.

When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821. To survive a motion for summary judgment, a plaintiff must establish a prima facie case for each element of his or her claims. *Tri-Town Marine, Inc. v. J.C. Milliken Agency, Inc.*, 2007 ME 67, ¶ 7, 924 A.2d 1066. "Summary judgment is appropriate when a defendant is immune from tort liability." *Day's Auto Body, Inc. v. Town of Medway*, 2016 ME 121, ¶ 7, 145 A.3d 1030 (quoting *Grossman v. Richards*, 1999 ME 9, ¶ 3, 722 A.2d 371).

---

[6] Each party's statements must include a reference to the record where "facts as would be admissible in evidence" may be found. M.R. Civ. P. 56(e). A party's opposing statement of material facts "must explicitly admit, deny or qualify facts by reference to each numbered paragraph, and a denial or qualification must be supported by a record citation." *Stanley v. Hancock Cnty. Comm'r*, 2004 ME 157, ¶ 13, 864 A.2d 169.

## III.  Discussion

"The MTCA expressly provides that, as a general rule, governmental entities are immune from suit on any and all tort claims seeking recovery of damages." *Klein v. Univ. of Me. Sys.*, 2022 ME 17, ¶ 8, ___ A.3d ___; *see* 14 M.R.S. § 8103(1). The MTCA does provide for limited exceptions to immunity, which the Law Court has described as "a cautious waiver of sovereign immunity by the Legislature in certain carefully circumscribed circumstances." *Searle v. Town of Bucksport*, 2010 ME 89, ¶ 27, 3 A.3d 390; *see* 14 M.R.S. § 8104-A. Courts must construe exceptions "strictly in order to adhere to the Legislature's directive that immunity for a governmental entity remains the general rule." *Klein*, 2022 ME 17, ¶ 8, ___ A.3d ___; *see Est. of Fortier v. City of Lewiston*, 2010 ME 50, ¶ 8, 997 A.2d 84 ("In construing section 8104-A, we recognize that the MTCA employs an exception-to-immunity approach rather than an exception-to-liability approach." (quotation marks omitted)).

As a governmental entity, MTA is immune from suit on any and all tort claims seeking recovery of damages unless an exception applies. The only exception at issue here is 14 M.R.S. § 8104-A(4), which reads in pertinent part:

> A governmental entity is liable for its negligent acts or omissions arising out of and occurring during the performance of construction, street cleaning or repair operations on any highway, town way, sidewalk, parking area, causeway, bridge, airport runway or taxiway, including appurtenances necessary for the control of those ways including, but not limited to, street signs, traffic lights, parking meters and guardrails.

The Nortrax Defendants and Mr. Brown argue that the exception is applicable because MTA negligently posted improper signage of the lane closure and (1) tree clearing is "construction" or "repair operations," or (2) the sweeping of the roadway in preparation for reopening the right lane was "street cleaning."

### A.  Tree Clearing

The MTCA does not define "construction" or "repair." Accordingly, the terms "must be given their plain and natural meaning and should be construed according to their natural import in common and approved usage." *Goodine v. State*, 468 A.2d 1002, 1004 (Me. 1983).

The Law Court has not interpreted "construction" or "repair" in the context of section 8104-A(4). Interpreting an insurance contract, the Law Court has said that "repair" is commonly understood to mean "to restore to sound condition after damage or injury." *Hall v. Acadia Ins. Co.*, 2002 ME 110, ¶ 7, 801 A.2d 993. Clearing trees from within one hundred feet of the centerline of the Turnpike allows more sunlight to reach the road, which increases visibility of animals near the roadway and decreases the amount of salt needed. Plainly, the work did not "repair" any damaged element of the Turnpike.

Nor did the tree clearing constitute "construction." Black's Law Dictionary (11th ed. 2019) defines "construction" as: "The act of building by combining or arranging parts or elements; the thing so built." As the Nortrax Defendants argue, later stages of the project to widen the Turnpike are likely to involve "construction." However, the only stage of the project relevant to this matter is the stage in which MTA's negligent acts or omissions allegedly occurred. *See Rivard v. Lewiston*, 516 A.2d 555, 556 (Me. 1986) ("[T]he plain meaning of this statute requires that both the negligence and the bodily injury must arise out of and occur during construction, street cleaning or repairs.").

At the time of the Accident, MTA controlled traffic and maintained a lane closure while CLT cleared trees. The work did not involve "building," "combining," or

"arranging." It was not "construction."[7] *See Bethanis v. Inhabitants of Readfield*, Nos. CV-98-193 & CV-98-284, 2000 Me. Super. LEXIS 143, at *4 (June 27, 2000) ("This court concludes that if the Law Court did not afford application of the exception in *Goodine* and *King* [*v. Town of Monmouth*, 1997 ME 151, 697 A.2d 837], it is not likely that they would apply it to a case involving tree trimming, albeit within the Town's right of way and for the safety of those using the Town roads.").

## B. Sweeping

The Law Court has defined "street cleaning" as follows: "The term 'street cleaning' is commonly understood to mean the removal of debris which is generated by pedestrian and vehicle traffic at all times of the year." *Goodine*, 468 A.2d at 1004 (discussing similar language of 14 M.R.S. § 8104(4) (1980), a previous version of section 8104-A(4)).

At some point before the Accident, CLT swept the right lane in preparation for its reopening. The parties' statements of material fact and cited portions of the record do not identify the material being swept. However, regardless of the material swept, MTA's alleged negligence in posting signs of the lane closure cannot reasonably be said to have arisen out of CLT's sweeping of the lane. It is undisputed that the right lane was closed to allow for movement of equipment to and from the work site—not for street cleaning purposes. Because MTA's negligent acts must have "aris[en] out of *and* occur[ed] during" street cleaning for liability to attach, CLT's sweeping of the lane does not bring MTA's acts with the exception of section 8104-A(4). *See Rivard*, 516 A.2d at 556.

---

[7] Mr. Brown places much weight on the fact that two MTA employees and an engineer agreed that the area in which the Accident occurred could be characterized as a "work zone" or "construction zone." However, the common meaning of the terms must guide the Court's interpretation, not the opinion of a select few.

A strict construction of the MTCA's exceptions to immunity, which the Court must employ, does not encompass the work being performed at the time of the Accident. Thus, MTA is immune from suit.

## IV. Conclusion

For the foregoing reasons, no dispute of material fact exists, and the undisputed facts demonstrate that MTA is immune from suit on Mr. Brown's claims. Accordingly, MTA is entitled to summary judgment.

The entry is:

> Defendant Maine Turnpike Authority's Motion for Summary Judgment is GRANTED.

The Clerk is directed to incorporate this Order and Judgment into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: _March 29, 2022_

_____
MaryGay Kennedy, Justice
Maine Superior Court

Entered on the Docket: 03/29/2022