MAINE SUPREME JUDICIAL COURT

Reporter of Decisions

Decision:       2022 ME 35
Docket:        Yor-21-351
Argued:        May 9, 2022
Decided:       June 21, 2022

Panel:         STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, and LAWRENCE, JJ.*


TIMOTHY M. CONVERY et al.

v.

TOWN OF WELLS


LAWRENCE, J.

[¶1]  The Town of Wells appeals from an order of the Superior Court (York County, *Douglas, J.*) denying its motion for summary judgment in a personal injury suit brought by Timothy M. Convery and Kelli A. Gustafson.  The Town contends that the court erred in determining that it was not immune from liability pursuant to the Maine Tort Claims Act (MTCA), 14 M.R.S. §§ 8101-8118 (2022).  A provision in the MTCA waives the immunity of governmental entities "for an employee's negligent operation of [a] motor vehicle resulting in a collision."  14 M.R.S. § 8104-B(3).  The question on appeal is whether that provision only applies when a negligently operated government vehicle

---

* Although Justice Humphrey participated in the appeal, he retired before this opinion was certified.

2

directly collides with another vehicle or a person. Because the plain language of the MTCA does not limit the waiver of immunity in this fashion, we affirm the court's denial of the Town's summary judgment motion.

## I. BACKGROUND

[¶2] The following facts are undisputed. *See McDonald v. City of Portland*, 2020 ME 119, ¶¶ 1-2, 239 A.3d 662. On the morning of May 30, 2020, Joshua Burton stole a vehicle from Mr. Mike's Convenience Store in York and drove north on Route 1. Wells police officers were alerted, took a position on Route 1, and waited for Burton to pass. When they attempted to stop Burton, he sped away, and they followed in pursuit. Burton attempted to evade the police officers and drove erratically and traveled at speeds exceeding 100 miles per hour for portions of the chase. With traffic increasing as the chase proceeded from York into Kennebunk, the police officers contemplated calling off the chase, but they ultimately decided to continue in pursuit.

[¶3] Unfortunately, Convery and Gustafson, who were in Convery's vehicle, were also traveling north on Route 1 that morning. While the police officers were still pursuing Burton at a high rate of speed, Burton rear-ended Convery's vehicle, causing it to roll over several times and land in a ditch. At

the time of the incident, the Town did not have applicable insurance coverage. *See* 14 M.R.S. § 8116.

[¶4]  As a result of the collision, Convery and Gustafson filed a complaint in the Superior Court alleging that the police officers initiated an unnecessary, dangerous, and high-speed chase that the officers failed to terminate despite Burton's erratic and dangerous driving, and that these negligent acts were a direct and proximate cause of their injuries.[1]  The Town filed a motion for summary judgment asserting that section 8104-B(3)—which provides governmental entities immunity for discretionary functions—applied to the claim by Convery and Gustafson alleging negligent operation of a motor vehicle by the police officers.  The Town further argued that the exception to immunity contained within section 8104-B(3) for "an employee's negligent operation of [a] motor vehicle resulting in a collision" did not apply because the police officers' vehicle did not directly collide with another vehicle or a person during the police chase.  Convery and Gustafson opposed the motion, arguing that their

---

[1] Convery and Gustafson also alleged that the Town failed to appropriately supervise the police officers during the high-speed chase, properly adopt and employ appropriate policies and procedures, and adequately train the police officers to follow appropriate policies.  The court ruled that the Town was immune from liability to the extent that the claims by Convery and Gustafson were premised on an alleged failure to supervise or train the police officers, or alleged inadequate policies and procedures, because the exception to discretionary function immunity in 14 M.R.S. § 8104-B(3) (2022) does not apply to such claims.  This conclusion is not at issue in this appeal.

4

claim plainly fell within the exception to immunity contained in section 8104-B(3). On October 6, 2021, the court entered an order denying the Town's motion for summary judgment, concluding that section 8104-B(3) does not require that a government vehicle be directly involved in a collision for the exception to immunity to apply. The Town timely appealed.[2] *See* 14 M.R.S. § 1851 (2022); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

[¶5] On appeal, the Town argues that the court erred in denying its motion for summary judgment. The Town contends that the police officers' pursuit was a discretionary function and that Convery and Gustafson's alleged injuries did not arise out of a collision between Convery's vehicle and one of the Town's vehicles. The Town asserts that for those reasons, section 8104-B(3)'s exception to immunity does not apply to Convery and Gustafson's claim and therefore it is immune from suit.

[¶6] Governmental immunity is the sole subject of the MTCA. The MTCA expressly provides that, as a general rule, a governmental entity is immune

---

[2] Both parties agree, and it is well established, that although "[o]rdinarily, the final judgment rule prevents a party from appealing a trial court's decision on a motion before a final judgment has been rendered," *Fiber Materials, Inc. v. Subilia*, 2009 ME 71, ¶ 12, 974 A.2d 918, where a municipality "raises a claim of immunity pursuant to the [MTCA]," we will review the trial court's decision, *Estate of Fortier v. City of Lewiston*, 2010 ME 50, ¶ 1, 997 A.2d 84.

from suit on all tort claims seeking recovery of damages. *See Reid v. Town of Mount Vernon*, 2007 ME 125, ¶ 20, 932 A.2d 539; 14 M.R.S. § 8103(1). We have consistently required the strict construction of exceptions to immunity in the MTCA. *See Est. of Fortier v. City of Lewiston*, 2010 ME 50, ¶ 8, 997 A.2d 84; *Sanford v. Town of Shapleigh*, 2004 ME 73, ¶ 11, 850 A.2d 325; *Thompson v. Dep't of Inland Fisheries & Wildlife*, 2002 ME 78, ¶ 5, 796 A.2d 674; *New Orleans Tanker Corp. v. Dep't of Transp.*, 1999 ME 67, ¶ 5, 728 A.2d 673; *see also Clifford v. MaineGeneral Med. Ctr.*, 2014 ME 60, ¶ 49, 91 A.3d 567 ("We must strictly construe the MTCA because it was enacted in derogation of common law.").

[¶7] Title 14 M.R.S. § 8104-A contains "a cautious waiver of sovereign immunity by the Legislature in certain carefully circumscribed circumstances." *Searle v. Town of Bucksport*, 2010 ME 89, ¶ 27, 3 A.3d 390. This includes claims arising from a governmental entity's "negligent acts or omissions in its ownership, maintenance or use of any . . . [m]otor vehicle." 14 M.R.S. § 8104-A(1)(A). In *Norton v. Hall*, we held that the immunity for discretionary functions provided by section 8104-B(3), as it read at the time, shielded police officers and law enforcement agencies from liability arising out of the decision to engage in a high-speed response to an emergency and the manner in which the response is conducted, despite the motor vehicle exception in section

8104-A(1)(A).  2003 ME 118, ¶¶ 9, 11-13, 834 A.2d 928.  At the time of *Norton*,

section 8104-B(3) read,

> [A] governmental entity is not liable for any claim which results
> from . . . [p]erforming or failing to perform a discretionary function
> or duty, whether or not the discretion is abused and whether or not
> any statute, charter, ordinance, order, resolution or policy under
> which the discretionary function or duty is performed is valid or
> invalid.

14 M.R.S.A. § 8104-B(3) (2003).

[¶8]  About two years after our decision in *Norton*, the Legislature

amended section 8104-B(3).  P.L. 2005, ch. 448, § 1 (effective Sept. 17, 2005)

(codified at 14 M.R.S. § 8104-B(3) (2022)).  As amended, it provides,

> [A] governmental entity is not liable for any claim which results
> from . . . [p]erforming or failing to perform a discretionary function
> or duty, whether or not the discretion is abused and whether or not
> any statute, charter, ordinance, order, resolution or policy under
> which the discretionary function or duty is performed is valid or
> invalid, *except that if the discretionary function involves the
> operation of a motor vehicle, as defined in Title 29-A, section 101,
> subsection 42, this section does not provide immunity for the
> governmental entity for an employee's negligent operation of the
> motor vehicle resulting in a collision, regardless of whether the
> employee has immunity under this chapter.*

14 M.R.S. § 8104-B(3) (emphasis added).[3]

---

[3]  The Legislature did not remove immunity for government employees, only for the governmental entity.  *See* 14 M.R.S. § 8111(1)(C) (2022).  Thus, pursuant to 14 M.R.S. § 8111(1)(C), *Selby v. Cumberland County*, 2002 ME 80, 796 A.2d 678, and *Norton v. Hall*, 2003 ME 118, 834 A.2d 928, the police officers, as employees of a governmental entity, *see* 14 M.R.S. § 8102(1)-(3) (2022), are still immune from personal civil liability.

[¶9]  The narrow question presented here is whether the Legislature's 2005 amendment abrogates *Norton* such that the Town may be held liable in the present case.  2003 ME 118, ¶¶ 11-13, 834 A.2d 928.  Our analysis is therefore focused on the phrase "resulting in a collision."  14 M.R.S. § 8104-B(3).  The Town argues that the phrase "resulting in a collision," when construed narrowly in favor of immunity, should be read as "directly involved in a collision," requiring a direct collision between a negligently operated government vehicle[4] and another vehicle or a person.  Convery and Gustafson contend that "resulting in a collision" does not require a direct collision involving a government vehicle, but rather requires only that a negligently operated government vehicle *cause* a collision.

[¶10]  Although we have not previously addressed this precise question, the applicable principles of statutory construction are familiar.  "Our main objective in construing a statute is to give effect to the will of the Legislature.  In determining the Legislature's intent, we look first to the plain language of the statute."  *Klein v. Univ. of Me. Sys.*, 2022 ME 17, ¶ 7, 271 A.3d 777 (citation omitted).  In reviewing the plain language of a statute, we examine the statute

---

[4] Our use of the phrase "negligently operated government vehicle" should not be read to support a conclusion that "the motor vehicle resulting in a collision" must be owned by the government. 14 M.R.S. § 8104-B(3).  Rather, we are just using the phrase "negligently operated government vehicle" as a convenient way of saying "vehicle negligently operated by a government employee."

in the context of the entire statutory scheme and will construe it so as "to avoid absurd, illogical or inconsistent results."  *Urrutia v. Interstate Brands Int'l*, 2018 ME 24, ¶ 12, 179 A.3d 312 (quotation marks omitted).  Only if the meaning of a statute is ambiguous will we look beyond the words of the statute to examine other potential indicia of the Legislature's intent, such as the legislative history. *State v. Legassie*, 2017 ME 202, ¶ 13, 171 A.3d 589.

[¶11]  Because we have not yet had occasion to interpret the phrase "resulting in a collision," as that phrase is used in section 8104-B(3), it is appropriate to turn to dictionary definitions to help uncover its plain meaning. *See Searle*, 2010 ME 89, ¶ 31, 3 A.3d 390.  The New Oxford American Dictionary (3d ed. 2010) defines "result" as "a consequence, effect, or outcome of something."  *See State v. Sloboda*, 2020 ME 103, ¶ 10, 237 A.3d 848 (citing the definition of "result" in the New Oxford American Dictionary (3d ed. 2010) for the conclusion that "a result element is one that requires the defendant to have caused some specified harm or other outcome"); *Result*, Webster's New World College Dictionary (5th ed. 2016) (defining "result" as "to happen or issue as a consequence or effect"); *Result*, The American Heritage Dictionary of the

English Language (5th ed. 2016) (defining "result" as "[t]o happen as a consequence").[5]

[¶12]  The Town offers nothing in the way of dictionary definitions or case law in support of interpreting "resulting in a collision" to mean "directly involved in a collision."  Rather, the Town argues that its reading of the statute is supported by our practice of narrowly construing exceptions to immunity.  *See Est. of Fortier*, 2010 ME 50, ¶ 8, 997 A.2d 84 (recognizing that "the MTCA employs an exception-to-immunity approach" (quotation marks omitted)).  Nothing in section 8104-B(3), however, indicates that the Legislature intended for physical contact by a negligently operated government vehicle with another vehicle or a person to be the lynchpin for whether immunity is waived for discretionary functions performed by governmental entities.  Further, we are unable to subscribe to a premise which, carried to its logical conclusion, would permit the driver of a car involved in a minor fender bender with a negligently

---

[5]  Consistent with the cited dictionary definitions, courts have often interpreted the use of the phrase "resulting in" to require a showing of actual cause, as opposed to the higher showing required by the use of the term "cause"—a long-recognized legal hybrid concept indicating the need for a showing of both actual cause and proximate cause.  *See, e.g.*, *United States v. Houston*, 406 F.3d 1121, 1122-25 (9th Cir. 2005) (concluding that proximate cause was not a necessary element of a crime where the statute provided that an injury must "result from" the use of controlled substances); *People v. Wood*, 741 N.W.2d 574, 578 (Mich. Ct. App. 2007) (noting that the statute at issue "provides the causation element 'results in'" thus, "the only causation element the prosecution had to establish . . . was factual causation"); *Burrage v. United States*, 571 U.S. 204, 211-12 (2014) (observing that "[w]here there is no . . . indication to the contrary, courts regularly read phrases like 'results from' to require but-for causality").

operated government vehicle to pursue a remedy, yet bar pursuit of a remedy to the driver of a car that runs into a tree, a wall, or a tractor-trailer truck when avoiding a negligently operated government vehicle and the driver suffers catastrophic injuries or dies. We discern no cogent reason based on the plain language of the statute that leads us to conclude that the Legislature intended to draw such a distinction. To do so, we would sacrifice a fair reading for one that is not only narrow, but illogical as well. This we cannot do. *See Urrutia*, 2018 ME 24, ¶ 12, 179 A.3d 312 (explaining that we construe statutes "to avoid absurd, illogical, or inconsistent results" (quotation marks omitted)).[6]

[¶13] Giving the phrase "resulting in a collision" its contextually appropriate, ordinary meaning, we conclude that section 8104-B(3) unambiguously conveys the legislative intent that a governmental entity's immunity is removed when a collision arises as "a consequence, effect, or outcome" of the negligent operation of a motor vehicle by one of its employees.[7]

---

[6] We also recognize that although the Legislature intended the MTCA to serve as a shield from governmental liability, it has also empowered citizens to obtain compensation when they are injured by certain enumerated negligent acts. *See Rodriguez v. Town of Moose River*, 2007 ME 68, ¶ 34 n.4, 922 A.2d 484; 14 M.R.S. § 8104-A (2022).

[7] Even if we were to conclude that the statutory language is ambiguous, thereby permitting us to look to the legislative history for other indicia of the Legislature's intent, *see State v. Legassie*, 2017 ME 202, ¶ 13, 171 A.3d 589, the result would be the same. The legislative history suggests that the 2005 amendment to section 8104-B(3) was not intended to require that a government vehicle be directly involved in a collision for the exception to immunity contained in section 8104-B(3) to apply. As initially proposed, the bill was more narrowly drawn, creating an exception to the discretionary immunity contained in section 8104-B(3) "for the negligent operation of a motor vehicle directly

*See Result*, New Oxford American Dictionary (3d ed. 2010). Thus, contrary to the Town's interpretation, neither the text of section 8104-B(3) nor the contextually appropriate definition of "resulting in a collision" requires a collision involving physical contact by a government vehicle. Because Convery and Gustafson alleged that the police officers negligently operated their motor vehicle resulting in a collision causing injury, the Town is not afforded governmental immunity from suit by section 8104-B(3). Accordingly, the court correctly determined that the Town was not entitled to the entry of a summary judgment.

---

involved in a collision." L.D. 936 (122nd Legis. 2005). The summary of the bill as originally introduced explained that the proposed amendment "reverses the effect of the Maine Supreme Judicial Court's majority decision in *Norton v. Hall*, 2003 ME 118, [834 A.2d 928,] and is consistent with the dissenting opinion." L.D. 936, Summary (122nd Legis. 2005). As introduced, the bill would have eliminated discretionary function immunity only when a government vehicle was directly involved in a collision.

After committee hearings and work sessions on the bill, however, it was amended to replace the narrower "directly involved in a collision" language with the broader "resulting in a collision" language. Comm. Amend. B. to L.D. 936, No. H-694 (122nd Legis. 2005). The new summary to the amendment explained that the change "provides that a governmental entity is not immune for negligent operation of a motor vehicle by an employee of the governmental entity when the employee's negligent operation of that motor vehicle results in a collision." Comm. Amend. B. to L.D. 936, No. H-694, Summary (122nd Legis. 2005).

To accept the Town's narrow reading of the exception to immunity in section 8104-B(3), we would need to disregard the Legislature's decision to steer away from the narrow language and replace it with the broader language that was enacted into law. Such an approach is contrary to our previous interpretation of amendments to statutory language. *See New Orleans Tanker Corp. v. Dep't of Transp.*, 1999 ME 67, ¶ 12, 728 A.2d 673 (interpreting the deletion of language in the MTCA as evidence that the Legislature intended to change the meaning of the statute); *Morton v. Hayden*, 154 Me. 6, 17, 142 A.2d 37, 43 (1958) (Webber, J., concurring) (explaining that the Legislature's amendment of a statute displays that "it ha[s] a purpose in mind and d[oes] not intend a meaningless act").

The entry is:

Judgment affirmed.

---

John J. Wall, III, Esq. (orally), Monaghan Leahy, LLP, Portland, for appellant Town of Wells

Taylor A. Asen, Esq. (orally), Gideon Asen LLC, New Gloucester, for appellees Timothy M. Convery and Kelli A. Gustafson

York County Superior Court docket number CV-2021-73
FOR CLERK REFERENCE ONLY